## WATSON v. E. E. NAUGLE TIE CO.

1. SALES—BREACH—CONTRACTS—RESCISSION FOR FAILURE TO PERFORM.

    After the constructive delivery of timber from seller to buyer, the defendant having failed to pay for it and a suggestion being made that a new contract be executed to meet the situation, the parties failed to come to an adjustment, and the letters between them including their negotiations are *held* not to amount to a rescission of the original contract by plaintiff.

2. SAME—FAILURE TO PAY PRICE—RESCISSION.

    Rescission of a contract of sale is not shown by testimony that the seller demanded that defendant either pay for or release the timber, and the latter's agent stated they would see about it, and the seller could not get them to release the property, but that the defendant later informed a prospective purchaser of the timber that he might take it and that the defendant made no claim to it.

Error to Chippewa; Steere, J. Submitted November 9, 1909. (Docket No. 179.) Decided December 10, 1909.

Assumpsit by Thomas H. Watson against the E. E. Naugle Tie Company for goods sold and delivered. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Horace M. Oren*, for appellant.

*Davidson & Hudson*, for appellee.

HOOKER, J.   A former judgment for the plaintiff in this cause was reversed for the reason that the circuit judge had directed a verdict for the price of certain ties and posts, designated as the McInnis timber and Demerest timber, instead of leaving to the jury the question whether there had been a surrender or discharge of the contract as to the ties and posts.   See 148 Mich. 675 (112 N. W. 752). He did leave that question to the jury as to poles.   Defendant afterwards was permitted to make certain amendments to his plea, and the cause was tried again; plaintiff recovering upon his claim relating to the McInnis timber. Defendant has again appealed, and the only question before us is whether the court erred in declining to direct a verdict for defendant.

Nothing but the McInnis timber is involved upon this record.   Among the amendments to the plea was the following, viz. :

" Even though as respects said items there had been an acceptance thereof by, and constructive delivery thereof to, the defendant whereby title had become vested in defendant, yet that prior to the taking of actual possession thereof by defendant, and before payment of the purchase price or any portion thereof by defendant, the plaintiff rescinded the contract for the sale and purchase of each and all of said items and retook the same from the constructive possession of said defendant, and thereby barred himself from recovery for said items in his said suit."

Defendant's points are stated in his brief:

" Rescission or discharge of the original contract, as respects the McInnis timber, was affected by a subsequent

written contract between plaintiff and defendant, and the jury should have been so charged and verdict directed. * * *

"Rescission or discharge of the original contract as respects the McInnis timber was later again effected by a parol executed contract, the facts and terms of which were undisputed, and the effect of which should have been declared by the court in directing a verdict of no cause of action for the timber in question."

1. Was the contract rescinded by plaintiff in writing? Counsel for the defendant concede that the title to the timber in controversy had vested in the defendant, and that it bore defendant's mark. It should have been shipped before August 16, 1903, but defendant had failed to furnish a vessel to carry the same. An inspection of this timber had proven unsatisfactory and had been canceled by mutual consent, and it had been agreed that it should be again inspected when it should be loaded, though this probably involved merely a recount of poles.

On October 16th plaintiff wrote defendant as follows:

"DE TOUR, MICH., October 16, 1903.
"E. E. NAUGLE TIE CO.,
          "CHICAGO, ILL.

"*Gents:* Not receiving any reply to my letter of 10th, would now ask that you accept the balance of my timber on the shore where it now lies and pay for same, I having fulfilled my part of the contract, and it would not be reasonable for you to expect me to pay double price for trying to load this now. Water is cold and men scarce, everything will be to disadvantage as you know through no fault of mine, as I stood ready to load at any time, and have repeatedly requested you to send boats. What I now ask is that you instruct your Mr. Jacobi to inspect and pay for on the beach and settle up in full, so that I can commence this winter's operations as everything (as far as timber is concerned) is virtually tied up pending a settlement of last winter's work. People I bought off last winter are ready to contract and go into camp, but will not until last winter's work has been straightened up and as there is other buyers on the ground this year it makes it more binding to be ready to do business at any time the

camp men are, so hoping you will give this your immediate attention and greatly oblige,

"Yours truly,

" T. H. WATSON."

Advancements had been made on all timber furnished, and on November 17th, 25th, and 27th plaintiff made statements of account, which admittedly charged defendant only with timber taken away by it, and applied by way of credit upon the same all advancements. We understand that defendant claims for this only that it left the matter in a situation that gave the plaintiff the right to rescind the contract as to this timber. That may perhaps be safely conceded, but it still leaves the question "whether he did rescind." On November 25th defendant wrote, as follows:

"I was taking with Mr. Willson about your account when he was in Chicago Monday, and we both want to get it in proper shape at the earliest possible moment, and Mr. Willson agreed with me that he would send an inspector to tally up the balance of the material we bought from you, and he is in Alpena today, and I think he will be in the Soo, Michigan, within two or three days, and you can either telephone him, or arrange the details by addressing him, care Iroquois Hotel.

"Yours truly,

" E. E. NAUGLE, President."

2—Dic. E. E. N.

Mr. Dean was sent to inspect this timber, but did not succeed in doing so. Defendant's letter of December 29th shows this:

"Mr. T. H. WATSON,

"De Tour, Mich.

"*Dear Sir:* Your letter addressed to me at the Soo has reached me. Mr. Dean told me that it was impossible to cross Drummond Island at the time he left there and I have not heard that there is a safe crossing yet, although there may be now. He also told me that he saw several of your operators on the island and that they told him it was impossible to tally and inspect the poles as they were piled upon the island at this time of the year,

159 MICH.—12.

therefore I did not send him back there. * * * If it is true that the material cannot be inspected and tallied now, the only way that I know to handle the posts and poles that are still on the island would be to make a new contract for a specified amount of poles of certain lengths and sizes, to be delivered the first thing in the spring and to make such payments upon them as we might mutually agree upon. This, however, is only a suggestion, and I should be glad to hear from you upon it."

It is evident that there had been no claim of rescission up to this time. Plaintiff wrote in answer:

"Mr. Geo. Willson,
        "Sault Ste. Marie, Mich.
    "*Dear Sir:* Replying to yours of 29th will say regarding your suggestion relative to all of my timber not being loaded, this I know was all loaded and I have Mr. Jacobi's tally of same. The boats that Mr. Jacobi was not present at the loading I had copy of and Mr. Dean together with myself compared your Chicago inspection with our copy and they compare within a trifle and when your Mr. Jacobi brought in his tally of the other cargoes I paid my men that got this timber out accordingly and now I must have a settlement for same. I have waited and done without my money now for a year and now must insist on a settlement in full if not I shall proceed at once to enter suit. As for your Mr. Dean not going over to the island to count up, that does not annoy me, as the timber is worth the money where it is. I care nothing about what you did not take, it is what you have got I want pay for."

Does this correspondence conclusively constitute a rescission? We think not. The defendant was careful to make "only a suggestion of a new contract." The plaintiff declined to discuss the matter, merely saying "that did not annoy him." The court properly refused to take this question from the jury.

2. Was there a subsequent oral rescission? During the following spring Watson met Willson at the Soo, and made a demand that defendant either pay for or release this timber. O'Dell, a member of the defendant, was with Willson. After a conference, Watson says that the answer made was, "We will see about it." There was

testimony that plaintiff had made a contract for other timber to be cut with one Gilpin, and that he was willing to receive this lumber upon it.    Watson says he went to the Soo to get them to release it and take their mark off, but got no satisfaction, and went home.    He heard no more from them, but it appears that a few weeks later Willson told Gilpin that defendant did not claim the poles, and that he, Gilpin, was at perfect liberty to take them if he wished.    He did not take them, however.    We are of the opinion that this should be considered neither a readjustment nor a rescission.    It was an offer to defendant which, had it been accepted at the time, would have relieved it from liability, but there is nothing to indicate that it was a standing offer, or that plaintiff understood at the termination of the interview that he had released or settled his claim.    The testimony shows clearly that defendants did not perform their contract, that plaintiff never released them, and, while he offered to defendant an alternative for full performance, it was not accepted, and there is no ground for holding that the offer should be considered tantamount to a rescission or to an agreement which would have the effect of revesting title in plaintiff and relieving defendant of its obligation to perform its contract.

The judgment is affirmed.

BLAIR, C. J., and MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.