JOSEPH BRADSTREET and others, *vs.* ABRAM RICH, Junior.

Kennebec.    Opinion January 27, 1883.

*Contract.    Practice.    Exceptions.*

The defendant on the sixth of April, 1876, at New York, contracted with H. W. F. to sell him ten thousand tons of river ice of a certain description, deliverable at a specified time and place and price, H. W. F. to pay by accepting sight drafts on terms set forth in their contract.    On the fifteenth of May, following, the plaintiffs at Gardiner, signed on the back of the defendant's contract with H. W. F. the following agreement: "We, the undersigned, hereby agree to furnish A. Rich, Jr. three thousand tons of ice, (3000 tons), per the within contract."    *Held*;

1. That this agreement was with the defendant, and H. W. F. was no party to it.

2. That by the terms "per the within contract," the defendant's agreement with H. W. F. was so far incorporated in his contract with the plaintiffs, as to designate the quality of the ice, when and where deliverable and the price.

3. If the plaintiffs delivered ice to the defendant under this written contract signed by them, the title to the property passes to the defendant, and an obligation arises on his part to perform the terms and stipulations of the contract.

When one agrees in writing to deliver to another a chattel at a price and time, and in a manner specified, and the other party, though not signing the contract, takes it and claims execution of it on the part of the party signing it, he must be held as receiving it according to the terms of the written contract.

If the court errs in stating the grounds of the defence, it is for the counsel to correct such misapprehension, and a subsequent correction removes all grounds for complaint.

A party excepting must show affirmatively that an erroneous instruction was given or a proper request refused.    It is not enough to show that possibly more full and accurate instructions might have been given, no request having been made for them.

Exceptions will not be allowed for an inaccurate or erroneous statement of the testimony of a witness.    The attention of the court should be called to the matter at the time.

ON EXCEPTIONS AND REPORT upon motion to set aside the verdict.

Assumpsit on account annexed, for eleven cargoes of ice,

claiming the amount due with interest to be five thousand six hundred seventy-seven dollars and forty-three cents.

The writ was dated February 5, 1877.

This case has been once before at the law court and is reported in 72 Maine, 233.

The second trial was at the October term, 1881, and the verdict was for six thousand and fifteen dollars. It now comes to the law court on exceptions and motion of the defendant.

The material facts are stated in the opinion.

*J. Baker* and *L. Clay*, for the plaintiffs, cited : On the motion, *Warren* v. *Williams,* 52 Maine, 343 ; *Folsom* v. *Skofield,* 53 Maine, 171 ; *Staples* v. *Wellington,* 58 Maine, 453 ; *Enfield* v. *Buswell,* 62 Maine, 128. On the exceptions,—*Adams* v. *Hill,* 16 Maine, 215 ; *Sawyer* v. *Hammatt,* 15 Maine, 40 ; *Virgie* v. *Stetson,* 73 Maine, 452 ; *Stephenson* v. *Thayer,* 63 Maine, 143 ; *Smart* v. *White,* 73 Maine, 332.

*H. M. Heath,* for the defendant, contended that the court erred in the instruction that the indorsement adopted and incorporated into it, the " within contract." If so, then there was an absolute sale from plaintiffs to defendant, of three thousand tons of ice, upon the specified terms, and the parol evidence introduced on both sides affecting and changing the within contract was inadmissible. The position of the court in 72 Maine, 233, carries with it, *ex necessitate,* the idea that " the within contract " is *not* a part of the indorsement.

The court inaccurately stated the position of the defendant and the testimony of a witness. An instruction which misrepresents the evidence before the jury is erroneous. *Frame* v. *Badger,* 79 Ill. 441.

The court assumed the existence of facts which there was no evidence tending to prove, and gave undue prominence to such. *Sawyer* v. *Hannibal,* 37 Mo. 240 ; *Clarke* v. *Hammerle,* 27 Mo. 55 ; *Anderson* v. *Kincheloe,* 30 Mo. 520 ; *Fine* v. *St. Louis P. School,* 39 Mo. 59 ; *Rose* v. *Spies,* 44 Mo. 20 ; *Jones* v. *Jones,* 57 Mo. 138 ; *Parker* v. *Donaldson,* 6 Watts and S. 132.

We complain of the qualifications attached to our requests, because there was no evidence upon which to rest such qualifications.

The presiding judge assumed and held that the arrangement between the parties was a contract of sale. We deny it. It was of the nature of a partnership—the plaintiffs were to furnish three-tenths of the ice and the defendant was to manage the business, answerable only for due diligence and actual receipts. *Bethel Steam Mill Co.* v. *Brown*, 57 Maine, 9.

Counsel further elaborately argued the motion to set aside the verdict.

APPLETON, C. J. On May 6, 1876, at New York, the defendant made an agreement under seal, with Hixon W. Field, to sell him ten thousand tons of river ice of a certain description, delivered within a certain time, free on board of vessels at the place of landing on the Kennebec river or its vicinity, at two dollars and fifty cents per ton, for which Field was to pay on presentation of a sight draft with bill of lading and weigher's certificate attached thereto. For the contract in full, see *Bradstreet* v. *Rich*, 72 Maine, 233.

Subsequently the plaintiffs signed on the back of the defendant's contract with Field, the following agreement:

" We, the undersigned, hereby agree to furnish A. Rich, Jr., three thousand tons of ice, (3000 tons,) per the within contract.

Gardiner, May 15, 1876.              Joseph Bradstreet.
                                      L. D. Cook.
                                      P. G. Bradstreet.
                                      F. Stevens."

Before the delivery of ice under the contract between Field and defendant, bearing date May 6, 1876, was completed, Field failed. This action is brought to recover compensation for ice delivered the defendant under the agreement of May 15, 1876.

The defence is that the defendant procured the contract with Field at the solicitation and for the benefit of the plaintiffs as well

as himself—that they took equally with himself the risk of Field's insolvency, and that their indorsement on the same was to indicate their share in the contract, namely, three-tenths, and that his liability was contingent and not absolute, he being responsible only for the amounts received from Field, and that they were to furnish Rich ice to be sold to Field in fulfillment of his contract.

The plaintiffs claimed that the sale was made to the defendant, that it was absolute, and that they were not parties in any way to the defendant's contract with Field. The jury found for the plaintiffs, on this issue.

The contract under which the plaintiffs claim to recover, was with the defendant. Field was no party to the same. The plaintiffs performing it could not look to him for payment. They had no right to draw for funds. So far as the evidence disclosed, Field had never any dealings with the plaintiffs, nor was he even aware of their contract with the defendant. In case of its breach he had no right of action against them.

The issue presented was whether the plaintiffs were to share with the defendant the risks as well as the benefit of his contract with Field, or were to look to him as the purchaser of their ice. The jury rendered a verdict against the defendant, and he has filed exceptions to the rulings of the presiding justice, and a motion for a new trial, on the ground that the verdict is against evidence.

(1.) It is objected that the jury were instructed that the memorandum signed by the plaintiffs incorporated in it the contract of the defendant with Field. It reads, "per the within contract." When a contract has reference to another paper for its terms, the effect is the same as if the words of the paper referred to were inserted in the contract. *Adams* v. *Hill*, 16 Maine, 215 ; *Sawyer* v. *Hammatt*, 15 Maine, 40. The reference to the contract was for some purpose. It was to designate the quality of the ice, when and where it was to be delivered, and its price. It indicated to the plaintiffs what they were to do, if it was a sale, to enable the defendant to perform his contract. If the plaintiffs were to be partners in the contract to the extent of three-tenths, it referred them to the contract in the performance

of which they were interested. Whether the hypothesis of the plaintiffs or the defendants be the true one, in either event, the contract was, with certain limitations, a part of the same.

(2.) It is said that the court erred in stating the ground of defence—that this was not a contract between himself and the plaintiffs, but that the contract, on the part of the plaintiffs, was really with Field. But if there was an error of this kind, it was the duty of counsel to advise the court that it misapprehended the nature of the defence. It appears, however, that the error was corrected, the court subsequently instructing the jury that " whatever contract there was in this case, was between the plaintiffs and the defendant." The jury were, in this respect, instructed in accordance with the claim of the defendant.

The court instructed the jury that " when a man agrees in writing to deliver to another a chattel at a price specified, and at a time and in a manner specified, and the other party, though not signing the contract himself, takes it and claims execution of it on the part of the party signing it, and receives the property under it, he must be held as receiving it according to the terms of the written contract signed by the vendor." This proposition, as matter of law, will hardly be questioned.

(3.) The court then proceeded to give this further instruction : " I instruct you as matter of law, that if the plaintiffs delivered ice to the defendant under this written contract by them signed, an obligation arises on the part of the defendant to perform on his part in accordance with the terms and stipulations of the plaintiffs' written contract ; and when the property was delivered under that contract, the title passed to the defendant."

This instruction withdraws nothing from the jury. It is conditional. If the facts are so and so, a certain legal conclusion necessarily follows. Such is the instruction. In it we perceive no error of law. If correct instructions are given, it is no ground of exception that instructions not requested, but which might properly have been given, were not given. If the defendant had desired further and additional instructions applicable to the hypothesis upon which the defense rested, he should have requested them. " Upon a bill of exceptions," observes LORD,

J., in *Corrigan* v. *Conn. F. Ins. Co.* 122 Mass. 298, "it is not sufficient for a party to show that possibly full and accurate instructions were not given, but the party excepting must show affirmatively either that some instruction was given or ruling made which was erroneous in law, or that some proper request for instructions or rulings was refused." Here the instruction so far as given on the point was correct, and no additional one was requested. To the same effect is the case of *Hooksett* v. *Amoskeag Man. Co.* 44 N. H. 105.

(4.) A portion only of the ice sued for in this action came into Field's hands. As to such portion we do not understand that the defendant complains as to the finding of the jury.

(5.) The principal ground of complaint has relation to the cargoes received by McCausland, and by him shipped to New York. One grievance is that the presiding justice did not state accurately his testimony to the jury. If so, the obvious duty of counsel was to call the attention of the court to the alleged inaccuracy, that it might at once be corrected. *State* v. *Benner*, 64 Maine, 267. "No exception," remarks BELL, C. J., in *Cutler* v. *Welsh*, 43 N. H. 497, "can be taken on account of any defective or erroneous statement of the evidence by the judge, unless his attention is called to it at the time. . . The time to object was when the remark was made and the counsel must be understood as assenting that the error is unimportant, if he does not think it worth his while to correct it on the spot."

The exceptions relating to the testimony of McCausland must be regarded as relating to some supposed error of law in the portions of the charge to which exception is taken. It does not appear that the attention of the court was specifically called to any alleged mis-statements of the evidence, or that any corrections of the statements made were desired. If any were made, we must look to the exceptions for their correction and not elsewhere. But the exceptions give no means for determining whether error existed or not. *Smart* v. *White*, 73 Maine, 332.

In the remarks of the presiding judge in relation to and his comments on the testimony of McCausland, no error of law is perceived. It was the duty of the court to call the attention of the

jury to the testimony. The extent to which he should do it was matter of discretion. No expression of opinion as to any fact is stated. Nothing is withdrawn from the consideration of the jury. The whole is left to their deliberate judgment. *Virgie* v. *Stetson*, 73 Maine, 452.

If the defendant had the cargoes receipted for by McCausland, it matters not to these plaintiffs what he did with them. They did go to complete his contract with Field. Taking them and disposing of them according to his good will and pleasure, he should account for them.

(6.) The counsel for the defendant requested the court to give the following instruction : " If McCausland was not authorized to go to the plaintiffs and receive ice under this contract, but was directed to go there and load his vessels at the plaintiffs' houses, an equal amount of Rich's ice at the Farmingdale houses to be loaded in return therefor, then McCausland would have no authority to represent the defendant in receiving the ice under the contract and to give receipts for him specifying that the ice was received under the Field contract."

This instruction was given, the court remarking that he supposed he had already given it. He then added " that McCausland would have no right to take ice and bind the defendant unless the defendant authorized him to take under the contract between the parties. If McCausland was authorized by the defendant to take the ice at those houses under the contract between the parties, the defendant undertaking on his part to load like cargoes at the houses in Farmingdale, or to authorize McCausland to do so, to go to Field, then McCausland would be the agent of the defendant and would have authority to bind him in regard to these matters. If he had no such authority, then of course he could not bind the defendant, and the defendant would not be bound by his acts. If he had no authority to act for the defendant in these matters, he had no authority to give a receipt for the cargoes as received under the contract. But if he had authority from the defendant to take those cargoes from the plaintiffs in part performance of the plaintiffs' contract, then whatever he did would be precisely the same as if the defendant himself did the same act."

The issue presented is as to the authority of McCausland.    It is left for the jury to determine whether he acted under and by the authority of Rich.   If he did, Rich should be bound by his acts.   If Rich had a delivery of the cargoes shipped by McCausland by his order, no reason can be perceived why he should not pay for them, whatever Rich may have done with them.   It is his duty to account for them to the plaintiffs.

A second request was made in these words : "That if McCausland was directed to go to the plaintiffs and load his vessels at the plaintiffs' houses, an equal amount of Rich's ice at the Farmingdale houses to be loaded in return therefor, then McCausland would have no authority to represent the defendant in receiving ice under any express or implied promise to pay for the same in money and to give receipts binding Rich to pay for the same."

This was given with the same qualifications as in the preceding request.   The court gave the precise rule of law as desired by the defendant and submitted the question of authority or not to the jury.

(7.) The evidence bearing on the facts in issue is contradictory.   Its force and effect was for the jury.   Their conclusion is binding on the parties.   No misconduct is shown on their part.   It is not a case where the preponderance of evidence on the part of the defendant is such as to require our interference.

*Motion and exceptions overruled.*

WALTON, BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.