No. 13,924.

FERRE CANAL COMPANY, LIMITED, vs. JOHN P. BURGIN.

| 106 | 309 |
|-----|-----|
| f121 | 542 |

### SYLLABUS.

1. The agreement of parties that the contract shall be reduced to writing is a part of the contract; and, until fulfilled, the contract itself is incomplete.
2. So that if a rice planter, on the one part, and a canal company whose business it is to furnish water to rice planters for the irrigation of their crops, on the other part, have an agreement, but contemplate that said agreement shall be reduced to writing, such company cannot recover against such rice planter on said agreement for water furnished, but can recover only on the implied contract to pay for water furnished and received—*i. e.* on a *quantum meruit.*
3. In the absence of a contract the privilege provided for by Act 26 of 1898 cannot come into existence in the absence of an agreed price, and there can be no agreed price in the absence of a contract.

APPEAL from the Eighteenth Judicial District, Parish of Acadia.—*DeBaillon, J.*

*Philip J. Chappuis (Thomas H. Lewis* and *Thomas R. Smith,* of Counsel), for Plaintiff, Appellant.

*Story & Pugh,* for Defendant, Appellee.

The opinion of the court was delivered by

PROVOSTY, J. The plaintiff, a corporation engaged in supplying farmers with water for the irrigation of rice crops and owning the canals, pumping machinery, etc., required for that purpose, furnished water to the defendant, a rice farmer, for the irrigation of his crop of 1900, and now claims of the defendant one-fifth of his rice crop of that year, or the value thereof, basing itself in said demand on a contract. The suit is accompanied by sequestration.

Defendant admits his obligation to pay for the water, but denies that there was a contract; and, in reconvention, prays damages for a wrongful sequestration.

The intention of the parties was that their contract should be in writing. When plaintiff began supplying water, and defendant began receiving water, it was with the distinct understanding that they were doing so under and by virtue of a contract to be thereafter entered into

between them in writing. Towards the middle of the water furnishing season, on the 7th of July, the defendant and a Mr. Duller, an agent of plaintiff, but without authority to sign contracts, met for the purpose of drawing up the contract. Mr. Duller filled out the usual printed form—defendant furnishing the description of his land—and handed it to defendant for signature. Defendant, without reading, enquired whether the contract was the same as last year's. Mr. Duller answered that it was, with the exception of a few clauses. Defendant, without reading, declined to sign, giving as his reason that he would not sign until the company had signed and he could have his copy of the contract. This, he says, he was doing under advice of counsel. Thereafter, on the 23rd of July, the contract was signed by the company, but not by defendant. The company was desirous of obtaining defendant's signature, but in point of fact never did obtain it. Whether defendant intentionally avoided to sign the contract, does not positively appear. The company's mode of carrying on its business is to make contracts with its customers in writing. The agent of the company testifies that his company's instructions to him were that the company required contracts to be in writing.

Under these circumstances, we conclude that the execution of the written contract was a condition precedent to the existence of the contract. "It is elementary in our law, that where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete, and it cannot be enforced until it is signed by all the parties." Fredericks vs. Fasnacht, 30 Ann. 119.

The application of this doctrine is not restricted to executory agreements, but extends to agreements in part, or in whole, carried out. Thus in the case of DesBoulet vs. Gravier, 1st N. S. 420, the agreement was for the sale of a boat. The agreement was complete as to everything except the execution of the writing agreed upon between the

Canal Company, Limited, vs. Burgin.

parties. The suit was for the price of the thing sold. Porter, J., organ of the court, said: "Nor do we think that the fact of Gravier having acknowledged himself to be in possession of the schooner, by directing the person who had her in charge, to take care of her for him can prevent the application of the principle to the case before us. We regard this fact of possession as one of those circumstances which, coupled with others, would have made the same complete if there had been no agreement to put it in writing; but when that agreement exists, the necessity of complying with it arises from the parties having added that condition to the other things required to make a legal contract. No case indeed, could occur, where the operation of the principle of law here invoked could be examined, unless the contract was complete, independent of its being reduced to writing, and we cannot distinguish between possession and consent, and price, and the other circumstances which would make the agreement binding."

Thus, again, in the case of Meyer vs. Labau *et als.*, 51 Ann. 1726, Louis Cyr, Paul Cyr and George Labau sold a store and the good will thereof to the plaintiff. The sale was evidenced by two instruments. One of the instruments was signed by all three of the vendors; the other, by George Labau and Paul Cyr, but not by Louis Cyr. Subsequently the vendors established a rival store, thereby violating the contract for the sale of the good will, and suit in damages was brought against all three of them. The court held that George Labau and Paul Cyr, who had signed the instrument selling the good will, were liable; but that Louis Cyr, who had not signed the instrument, was not liable; quoting 3rd M. 349; 1 N. S. 421; 24 Ann. 433; 4 La. 77; 30 Ann. 32; 28 Ann. 33. "In this instance," said the court, "the parties did contemplate that the understanding and agreement as to good will, etc., should be reduced to writing and signed."

Again, in the case of Bloeker vs. Tillman, 4 La. 77, the parties entered into an agreement by which the plaintiff was to take charge of the defendant's warehouse and have one-third of the net profits; and by which, further, the agreement should be reduced to writing. The agreement was reduced to writing; was signed by the plaintiff; was handed to the defendant; who agreed that it was correctly written out, and promised that he would sign it. The defendant did not sign the agreement, but kept it. The plaintiff took upon himself the management of the warehouse and continued therein for about four months; when he was dismissed by the defendant. He brought suit for his pro-

portion of the profits for the time he was actually in the employ of the defendant, and for damages for a violation of the contract. Said the court, Martin, Judge: "The judge did not err. The case before him was one in which the parties contemplated a written contract to be deposited in the hands of a third person, for their common security; nothing shows in either of them an intention to be bound by a parol contract. The plaintiff himself subscribed to the agreement and gave time to the defendant to do the like. Till the writing was perfected by the signatures of all the parties, it was but an inchoate one, and either party had the right of recanting. The defendant, in doing so, availed himself of a legal right."

The plaintiff is entitled to recover of the defendant the value of the water taken, but this recovery cannot be had in the present suit; it being well settled that a person suing on a contract cannot recover on a *quantum meruit*.

As a further result, the sequestration must be dissolved, since, under the Act 26 of 1898, the plaintiff has a privilege only where there has been an agreed price; and in the absence of a contract there is no agreed price. The lower court allowed the plaintiff in reconvention five hundred dollars damages on dissolution of the sequestration. We see no reason for changing this judgment.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court be affirmed with costs in both courts.

Rehearing refused.