Submitted on briefs without argument, decided Sept. 26, 1911. Rehearing granted January 16, decided on rehearing March 19, 1912.

## SPANDE *v.* WESTERN LIFE INDEMNITY CO.

[117 Pac. 973, 122 Pac. 38.]

PARTIES—MUTUAL BENEFIT INSURANCE—ACTION—REAL PARTY IN INTEREST.

1. Where a fraternal benefit insurance certificate provided for payment only to plaintiff's wife, plaintiff cannot himself sue thereon without showing an assignment to him; Section 27, L. O. L., requiring actions to be brought in the name of the real party in interest.

FRAUDS, STATUTE OF—ANSWERING FOR DEBT—AGREEMENTS WITHIN STATUTE.

2. An agreement by a life insurance company to take the insurance of a fraternal benefit company and assume its liability under the policies taken over upon payment of dues, etc., by the members was, as between such members and the life company, a contract to answer for another's debt; and hence the agreement must satisfy the statute of frauds by showing a consideration.

EVIDENCE—BURDEN OF PROOF.

3. The burden is on plaintiff to prove material allegations of a complaint which were traversed by the answer.

INSURANCE—AGENCY—SUFFICIENCY OF EVIDENCE—AUTHORITY OF AGENT.

4. Evidence, in an action on a mutual benefit certificate claimed to have been taken over by defendant insurance company after it was issued to plaintiff by a fraternal benefit company, *held* not to show authority by defendant's manager to contract for defendant to assume the obligation on plaintiff's certificate.

EVIDENCE—HEARSAY.

5. A statement that witness "understood that another was manager of a company" was hearsay.

PRINCIPAL AND AGENT—PROOF OF AGENCY—PROOF.

6. While an agent is a competent witness to prove his agency, the agency cannot be shown by his letters or his oral declarations.

FRAUDS, STATUTE OF—EVIDENCE—SUFFICIENCY—CONSIDERATION.

7. Certain letters to plaintiff by an officer of defendant insurance company, which plaintiff claimed had taken over the business of a fraternal company in which he was insured, *held* not to show any consideration for defendant's assumption of the fraternal company's obligations, so as to comply with the statute of frauds.

INSURANCE—MUTUAL BENEFIT INSURANCE—REINSURANCE—TERMS OF CONTRACT—EVIDENCE.

8. Plaintiff, in suing on an insurance certificate, and relying on a contract made by defendant for the benefit of himself and other

members with the order in which he was originally insured, by which defendant agreed to take over such insurance and assume the obligations thereunder, should put that contract in evidence; a bare reference thereto in letters from defendant put in evidence being insufficient to show the terms of the contract.

CONTRACTS—REFERENCE TO OTHER INSTRUMENTS—EVIDENCE.

9. An instrument expressly referred to by a contract as containing a part of the stipulations of the parties becomes a part of the contract, and hence must be put in evidence to prove the whole contract.

TRIAL—NONSUIT—DETERMINATION.

10. In passing upon a motion for a nonsuit, the court should consider all the testimony and construe all the writings introduced by the plaintiff.

INSURANCE—REINSURANCE—CONTRACT—PROPOSAL AND ACCEPTANCE.

11. Where a conditional offer is made to execute a written reinsurance contract, there is no contract until the offer is accepted with its conditions and the writing is executed and delivered.

INSURANCE—REINSURANCE—CONTRACT—SEPARATE CONTRACT REFERRED TO.

12. Where an insured accepted a certificate from an indemnity company which stated that the company bound itself as set forth in a certain contract of reinsurance between it and the order in which the insured had his policy, such contract of reinsurance became a part of the contract between the insuréd and the indemnity company.

INSURANCE—REINSURANCE—CONSTRUCTION—ACCEPTED OFFER.

13. One who has accepted the offer of an indemnity company to reinsure him cannot adopt the part most favorable to him and reject the remainder.

INSURANCE—ACTIONS—PLEADING—PROOF..

14. One declaring upon a specific contract of reinsurance must prove all the conditions which are essential under it to fix and measure the defendant's liability.

From Clatsop: JAMES A. EAKIN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by H. A. Larsen Spande against the Western Life Indemnity Company.

After alleging the corporate character of the defendant and its authority to conduct the business of life insurance in the State of Oregon, the complaint recites that on August 28, 1888, the Washington Co-Operative Life Insurance Association was organized and doing business within the State of Oregon as a life insurance association

on a mutual benefit plan, and states "that on that date the said Washington Co-Operative Life Insurance Association, for a good and valuable consideration, executed and delivered to this plaintiff a 20-year endowment and insurance upon the life of this plaintiff, agreeing to pay plaintiff, should he live 20 years and pay his assessments, the sum of $2,000, or, if he should die before the expiration of said 20 years, to pay his beneficiary, plaintiff's wife, the sum of $2,000." According to the complaint, about September 10, 1898, the Washington association above named was reorganized under the name of the Order of Washington, and on September 20, 1904, with the consent of the plaintiff, the Order of Washington took up the original certificate of insurance issued to him by the Washington Co-Operative Life Insurance Association, and instead thereof issued to him another benefit certificate of life insurance and 20-year endowment, in words and figures following, to wit:

"Issued in lieu of Washington Co-Operative Life Insurance Association certificate number 245, dated August 28, 1888. No. 245. Life expectancy. 20 years. Age 30 years. Monthly payment $1.60. Certificate of Membership Issued by the Supreme Union, the Order of Washington, Portland, Oregon. Twentieth Century Endowment Department. This certifies, that H. A. Larsen Spande has been accepted and admitted as a member of Home Union No. 1, located at Portland, State of Oregon, and that in accordance with, and under the provisions of the laws of the order, he is entitled to all the rights, benefits, and privileges of membership therein, and the Order of Washington agrees that after the maturity of this certificate of membership, occasioned by the death of the member, or otherwise, one assessment on the life benefit membership collected for said fund not exceeding in amount the sum of two thousand dollars will be paid as a benefit to Emily Weokoline Larsen Spande, bearing relationship of wife, which sum shall, after the surrender of this certificate and satisfactory proof of death, or upon proof of the maturity of this certificate otherwise, shall

have been furnished be paid in accordance with the laws
of the order; provided the above named member shall be
in good standing in that order at the time of death or at
the time any benefits may accrue, and provided that he or
she shall have in every particular complied with the
constitution, laws, ritual, rules and usages of the order
now in force or those that may hereafter be adopted, and
has not obtained his or her membership by fraud, conceal-
ment or misrepresentation as to his or her age, physical
condition, habits or occupation as shown by his or her
application and medical examination, all of which is
hereby referred to and made a part of this certificate.  In
witness whereof, the Supreme President and Supreme
Secretary of the Supreme Union, the Order of 'Washing-
ton, have hereto subscribed their names and affixed the
corporate seal of the order at Portland, Oregon, this 20th
day of September, 1904.  Maturity of this policy dates
from original date, August 28, 1888.

"W. W. Terry, Supreme President.

[Seal.]        "J. L. Mitchell, Supreme Secretary."

"I hereby accept this certificate on the condition named
therein.  H. A. L. Spande. [Signature of member, in full.]

"Registered and delivered this 20th day of September,
1904."

The plaintiff avers that he complied with the rules and
regulations of the original Washington association and of
the Order of Washington without stating anywhere what
those rules and regulations were, and that on and prior to
March 21, 1908, the defendant represented to the plaintiff
that the Order of Washington had entered into an agree-
ment with the defendant, whereby the latter would take
over all the insurance then being carried by the Order of
Washington, and that by the payment to the defendant by
the plaintiff of the monthly assessment due by the terms
of the certificate issued by the order the same would be
assumed by the defendant, and that the defendant "then
and there, in writing, for a good and valuable consider-
ation in hand paid by this plaintiff, covenanted, con-
tracted, and agreed if this plaintiff would pay the said
defendant all of the assessments required to be paid

under the laws of the Supreme Union of the Order of Washington on said benefit certificate, life and twenty-year endowment policy hereinbefore mentioned that said defendant would assume all the conditions and stipulations contained in said insurance policy required to be done and performed by said Supreme Union of the Order of Washington."

He alleges the acceptance on his part of the contract and agreement alleged to have been made by the defendant, and that he complied with its terms, as well as with the terms of the certificate issued by the Order of Washington, until August 28, 1908, when he notified the defendant of the fact that he had lived out his life expectancy; that his policy had fully matured; and that he had in every way complied with the regulations and laws of said order and agreement between plaintiff and defendant, and demanded the payment to him by the defendant of the sum of $2,000, offering at the time to make such further proof as the defendant might require, or whatever was required by the rules, laws, or usages of the defendant, or the Order of Washington, but that the defendant waived further proof and refused payment of the sum of money mentioned. All the allegations of the complaint, except the corporate entity of defendant, were traversed by the answer.

As a further defense, the defendant alleged that the present contract made between the defendant and the Order of Washington was in words and figures as follows, the same being hereafter, for convenience, called "Exhibit A":

"Reinsurance Contract between Western Life Indemnity Company and the Order of Washington. This Agreement, made and entered into by and between the Western Life Indemnity Company, a corporation organized and doing business under the laws of the state of Illinois, of the city of Chicago, Illinois, hereinafter designated the company, and the Order of Washington, a corporation organized

and doing business under the laws of the State of Oregon, of the city of Portland, Oregon, hereinafter designated the order, by J. L. Mitchell, its attorney in fact, witnesseth that:

"Whereas, said order is a fraternal beneficiary society, with a subordinate lodge system, and under its by-laws has issued and has now outstanding membership certificates providing for indemnity in case of death or disability and has also issued and has outstanding certain other certificates providing for sick and accident benefits; and whereas, said order is desirous of transferring or reinsuring its members holding said certificate providing for death and disability indemnity only to said company:

"Now therefore, the said company, in consideration of the covenants and agreements hereinafter contained, does hereby reinsure and accept as its members, upon the terms and to the extent following, all of the living members of the said order holding said above described membership certificates, designated 'Life Benefit Certificates,' who are in good standing at twelve o'clock noon on the books of the said order on the date this agreement goes into effect; it being understood that this shall also include such delinquent members of said order as shall be hereafter reinstated under the terms of the said certificates. As to every such member said company will and does hereby assume the full liability under his or her said life benefit certificate for the full term of one year from twelve o'clock noon of the day this agreement goes into effect, unless such policy is sooner exchanged, as hereinafter provided. On or before the expiration of said term of one year, said company will issue to each such transferred or reinsured member, in lieu of his present life benefit certificate in said order, without medical examination and without expense to him or her, the whole life nonparticipating policy of said company, or any other form of policy now issued by said company, at its present prescribed premium rate for such policy, applicable to his or her then attained age, for an amount, not exceeding that provided by his present life benefit certificate in the said order, according to one of the two following options:

"First Option: Said member may receive from said company, in lieu of his or her said life benefit certificate

Sig. 8

in said order, upon filing his written application therefor, any form of policy now issued by said company, on which policy the member will be required to pay the present prescribed premium rate of the company for such policy, applicable to the said member's then attained age, the said policy to be free from all lodge dues; or

"Second Option: Said member may hereafter pay to said company the same premium amount heretofore paid by him or her to said order, and thereupon shall receive from said company, in lieu of his or her said life benefit certificate in said order, said company's whole life nonparticipating policy, for such an amount of insurance as said monthly payment will purchase, computed on the present whole life nonparticipating premium rate of said company applicable to the said member's then attained age, which net amount of insurance shall be plainly expressed in words and figures in the face of the policy; the said policy to be free from all lodge dues. (The whole life nonparticipating premium rate of said company is the National Fraternal Congress four per cent. net rate, with an adequate loading for expenses.)

"Any such member who fails to notify said company of his or her selection of one of said options within one year from the date hereof, shall be assumed to have selected and accepted the second of said options; and thereupon the policy provided for in said second option shall be issued to and accepted by him or her, in lieu of his or her said present life benefit certificate. That the entire undertaking of said company is to assume and carry the contracts of said order, transferred, as hereinbefore provided, and as evidenced by the said certificates, for the period of one year from the date this agreement goes into effect, and that at the end of said year, or before, upon the selection or acceptance of one of said options, as above provided, said company will issue to said transferred member, without medical examination or expense to the insured, the policy provided to be issued in the option so to be selected or accepted, which said policy when issued shall in the case of each and every transferred member, replace his life benefit certificate, and cause such certificate to become null and void. That until further notice from said company, during the term of one year, as aforesaid, premium payments may be made by such members, either

at the home office of said company or at such other place
or places as may from time to time be designated by said
company. That the subordinate unions of said order may
be continued by its present members, but such subordinate
unions shall not be necessary to the continuance of their
insurance in said company, neither shall said unions be a
part of or controlled in any manner by said company,
nor shall said company be held to any responsibility for
the acts of such unions, their officers or members. That
said company hereby reserves and is given the same right
of defense against any liability which may accrue to or
against it under or because of this agreement as would
or could be exercised by said order in the absence of
this agreement. That said order, through its proper
officers, and immediately upon the acceptance of this
agreement by its Supreme Union shall turn over and
deliver to said company or its authorized representatives,
all applications, medical examinations, warranties of
good health, files, letters, books, registers, cards, indexes,
records, mailing lists and any and everything pertaining
to the said life benefit certificates in force in said order
upon the date this agreement goes into effect.

"The said company agrees in consideration of said
transfer, to make payments to trustees, to be designated
by the order, in the manner following, viz.: Upon the
payment of monthly premiums or assessments hereunder,
to said company by such transferred members, said com-
pany will pay to said trustees the sum of fifty (50) cents
on each monthly premium or assessment, not exceeding
eight (8) premiums in number from any one member,
paid after the date hereof, to said company by each and
every such continuing transferred member; such several
amounts to be paid to said trustees on or before the 15th
day of each month, to cover premium payments made by
members for the preceding month, which said several
amounts are to be used by said trustees, together with
the assets of said order, to apply upon the payment of
existing mortuary and other liabilities of said order, and
the said company is not to be in any manner held liable
for the payment of any such pre-existing liability. All un-
earned premiums or assessments paid by said transferred
members to said order, prior to twelve o'clock, noon, of
the day this agreement takes effect, shall be accounted for

and credited upon the payments provided above, to be made by said company to said trustees. It is further agreed that this contract shall not go into effect until it has been duly ratified and executed by the Supreme Union of said Order of Washington.

"In witness whereof, said Western Life Indemnity Company, by authority and affirmative vote of its executive committee, has caused this agreement to be signed by its president, and its corporate seal affixed thereto, and the Order of Washington, by virtue of the authority of its Supreme Union, has caused this agreement to be executed by J. L. Mitchell, its attorney in fact, this 15th day of February, 1908. ·

Western Life Indemnity Company,<br>By Geo. M. Moulton, President.

"[Seal.]            Western Life Indemnity Company.

"Attest:  The Order of Washington.  A. N. Hislop, Secretary.

"By J. L. Mitchell, its Attorney in Fact."

Another defense of *ultra vires* is not necessary to be noticed for the purposes of this opinion.

The new matter in the answer is denied by the reply. A jury trial was had in which, at the close of the plaintiff's testimony, the defendant moved for a judgment of nonsuit on the grounds, among others, that the complaint does not state facts sufficient to constitute a cause of action, "for the reason that there is a total failure of proof on the part of plaintiff to establish any liability on the part of the defendant for any endowment or insurance whatever; and there is a total failure of evidence in proof to establish any contract on the part of the defendant to pay the plaintiff his certificate of insurance in the Order of Washington; and there is no evidence to show what the contract was or the terms of the contract between the defendant and the Order of Washington; and said plaintiff has failed to introduce evidence of or prove any contract between the defendant and the Order of Washington, whereby the defendant reinsured the members of the Order of Washington or assumed to pay their

policies, but has only introduced letters tending to show that there was a contract of some kind or description, but has not shown or proved the real contract."

And further:

"That there is insufficient evidence to justify a verdict against the defendant in said action, and also insufficient evidence to justify the court in submitting the said cause to a jury, or in submitting to said jury the nature or scope of any contract between the plaintiff and the defendant; and defendant objects to said cause being submitted to a jury on account of insufficient evidence, and on account of failure of the plaintiff to prove the contract entered into between the defendant and the Order of Washington, and referred to in the letters introduced in evidence by the plaintiff."

The motion for a judgment of nonsuit was overruled. The defendant offered evidence on its part and assigns sundry errors of the court in admitting and rejecting testimony, which, for the purposes of this opinion, are deemed unimportant. The trial resulted in a verdict and judgment for the plaintiff in the sum of $2,000, and the defendant appeals.                              REVERSED.

Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court, 56 Or. 622 (117 Pac. XI).

For appellant there was a brief over the names of *Messrs. Edward* and *A. R. Mendenhall,* and *Messrs. John H.* and *A. M. Smith.*

For respondent there was a brief over the names of *Messrs. Charles W.* and *George C. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The substance of the complaint is that the defendant, by an agreement made directly with the plaintiff, undertook to assume and discharge the obligation of the Order of Washington to him. By his own statement, he says

that he accepted the certificate of membership issued by the order in lieu of the one previously issued to him by the Washington Co-Operative Life Insurance Association. Although, as pleaded, the first certificate may have provided for the payment direct to plaintiff of the sum of $2,000 at the end of the 20-year period, or to his beneficiary in case he died sooner, in the one substituted for it by the Order of Washington the benefit does not inure to the plaintiff. By this latter certificate, the order does not stipulate for payment of any sum of money in any event to the plaintiff, but only to his wife. In any view of the case, she, or her successor in interest, is the only one who could recover on the substituted certificate. Here the plaintiff asks to recover in his own right on an obligation in favor of another, without pleading an assignment to himself of that other's cause of action. The stipulation of the instrument is that "the Order of Washington agrees that after the maturity of this certificate of membership occasioned by the death of the member or otherwise, one assessment * * not exceeding in amount the sum of $2,000.00 will be paid as a benefit to Emily Weokoline Larsen Spande, bearing relationship of wife." This does not furnish ground for recovery by plaintiff, for the action must be brought in the name of the real party in interest, who, in this case, appears to be plaintiff's wife. Section 27, L. O. L.

2, 3. Again, the legal effect of the contract pleaded by the plaintiff is that the defendant agreed with him to answer for the debt, default, or miscarriage of the Order of Washington; that is to say, in substance, at the end of the 20-year period, providing the plaintiff had complied with the terms of the contract on his part, there would then be a debt of $2,000 owing from the Order of Washington to him, or his beneficiary; and, according to the complaint, the substance of the contract on the part of the defendant was to answer for this possible debt of the

Order of Washington. This matter being traversed by the answer, it was incumbent upon the plaintiff to prove his allegation in that respect by such evidence as the statute of frauds requires, viz., an agreement in writing, or some note or memorandum thereof, expressing the consideration, and signed by the defendant or its lawfully authorized agent. Section 808, L. O. L. As evidence of the contract alleged, the plaintiff introduced three letters purporting to be signed by J. L. Mitchell, as "Manager of the Order of Washington Department, Western Life Indemnity Company." The signature of Mitchell, as well as his authority to sign, so as to charge the defendant, were both challenged by proper objections on the part of the defendant. The only evidence on that subject offered by plaintiff was that of P. J. McMannama, as follows:

"Q. Did you ever have any dealings with J. L. Mitchell?

"A. When?

"Q. During the time you were employed by the Western Life Indemnity Company?

"A. Yes, sir.

"Q. What position did Mr. J. L. Mitchell occupy with the Western Life Indemnity Company between February 15, 1908, and the last of the year?

"A. I could not tell you that of my own knowledge. I don't know anything about that, only what I would infer from his correspondence and papers.

"Q. What did the company hold him out to you to be?

"Mr. Smith: We object to that. He assumes that the company did hold him out in a certain way, and we object to that as incompetent and irrelevant.

"Court: Objection overruled.

"Q. Answer the question.

"A. I understood that he had the management of the Western department of their business.

"Mr. Smith: It is understood that an exception is allowed?

"Court: Exception is allowed.

"Q.   As the manager of the Western Life Indemnity Company?

"A.   That is what I understood.

"Q.   Did you have much correspondence in that regard?

"A.   Yes; considerable.

"Q.   You say he was so held out to you?

"A.   In a certain order of business; but if there was anything special I had to take it up with George M. Moulton."

4, 5, 6.   This testimony is not sufficient to prove any authority in Mitchell to bind the defendant.   The mere understanding of the witness is hearsay.   To say that Mitchell was held out by the defendant as its agent is but stating a conclusion of law.   The actions or declarations of the defendant in that connection should have been disclosed, in order to determine whether they amounted to holding him out as agent.   Further, although Mitchell, as a witness, would be a competent witness to prove his agency, yet his letters, or even his oral declarations reported by other witnesses, are not sufficient to establish such agency.

On the assumption, however, that his agency is proven, we pass to the letters themselves.   His first letter, apparently a circular addressed "Esteemed Comrade," without designating any one by name, after directing that quarterly dues be hereafter remitted direct to the company, proceeds as follows:

"Immediately upon receipt of your first remittance, this company will send you a 'Guarantee Slip' which you will attach to your Order of Washington contract.   This 'Guarantee Slip' will be countersigned by Geo. M. Moulton, president Western Life Indemnity Company, and it agrees to fulfill all the conditions of your present certificate for one year, upon your paying your regular dues and assessments.   This arrangement gives you double protection without additional cost.   A little later you will be sent a list of the several kinds of insurance certificates issued by the Western Life Indemnity Com-

pany, and then, if you wish, you may exchange your present certificate for any certificate issued by the Western Life Indemnity Company within the year. Upon receipt of your first remittance you will be mailed an official receipt, as well as a 'Guarantee Certificate.' Make your remittance by post office money order, bank draft or express money order."

His letter of March 25, 1908, addressed to plaintiff says:

"Enclosed herewith please find receipts covering the amount of your remittance, and also you will find enclosed guarantee certificate to be attached to your Order of Washington certificate as per agreement entered into by and between the Order of Washington and the Western Life Indemnity Company. Kindly send your next assessments direct to this office to keep your protection well secured. The reinsurance contract is going forward successfully in every degree and every comrade's certificate is now worth 100 cents on the dollar. We all have much cause for rejoicing over this change."

His third letter addressed to plaintiff incloses a receipt for assessment No. 5, and, besides that, is no more than an expression of his pleasure over the good condition of the company.

Conceding, for the sake of argument, that Mitchell had authority as agent to sign for the defendant, none of the letters in evidence purporting to bear his signature, as such, contain any definite memorandum of any agreement, and certainly do not express a consideration in any sense whatever. None of them come anywhere near meeting the requirements of the statute of frauds.

It was admitted that one George M. Moulton was the president of the defendant, and his signature to the letters and documents now here referred to was admitted. These documents follow:

"Geo. M. Moulton, President. The Order of Washington Department. Western Life Indemnity Company, Masonic Temple, Chicago. Chicago, February 22, 1908. To the Comrades of the Order of Washington: You have

already been officially advised by your Supreme President and Supreme Secretary that by the unanimous action of the Supreme Union of your order, and with the approval of the Insurance Department of Washington, the insurance on your life in the Order of Washington has been lawfully transferred to the Western Life Indemnity Company of Chicago. In behalf of this company, I extend to you a fraternal greeting with the glad hand of fellowship and cordial welcome into the bosom of our organization. By the payment to our company of the next monthly payment due by the terms of your present life benefit certificate you thereby become one of us and one with us, I trust until death do us part. Immediately upon our receipt of such payment, a formal agreement or guarantee will be transmitted to you for attachment to your present life benefit certificate, which will bind our company to fulfill all the obligations heretofore imposed upon the Order of Washington, under such certificates until such time as a policy for an equivalent amount can be issued on our forms and at our premium rates in accordance with the provisions of the reinsurance contract entered into between the Order of Washington and this company. Continue the monthly payments on your present certificate as heretofore in the same amount and in the same way. By so doing you may rest assured that your rights thereunder will be fully safeguarded and adequately protected. Come with us —live with us—die with us. You will never regret either.

"Faithfully yours,
"Geo. M. Moulton, President."

"Western Life Indemnity Company, Chicago. Kindly attach the enclosed rider agreement to your life benefit certificate as evidence that this company has assumed liability under said certificate pursuant to the terms of the reinsurance contract entered into between this company and the Order of Washington.

"Faithfully yours,
"Geo. M. Moulton, President."

The inclosure referred to in this last letter is as follows:

"Western Life Indemnity Company. Geo. M. Moulton, President. Home Office, Masonic Temple, Chicago. This

certifies, that all the covenants and obligations heretofore imposed and undertaken by the Order of Washington under and by virtue of a certain life benefit certificate No. 245, issued by said the Order of Washington on the life of H. A. L. Spande are hereby assumed by the Western Life Indemnity Company to the extent and in the manner as are set forth in a certain contract of reinsurance made and entered into by and between the Order of Washington, of Portland, Oregon, and the Western Life Indemnity Company of Chicago, Illinois, on the 15th day of February, A. D. 1908. Executed and delivered at the home office of the Western Life Indemnity Company in Chicago, Illinois, this 21st day of March, 1908.

"Western Life Indemnity Company,
"By Geo. M. Moulton, President."

7. As in the case of the Mitchell letters, so with the Moulton letters. Neither singly nor collectively do any of them comply with the statute of frauds in expressing the consideration of the agreement alleged to have been made between the defendant and the plaintiff.

8, 9. There is still further defect in the proof of the plaintiff as based upon these letters; that is, that while frequent reference is made to an agreement entered into by and between the Order of Washington and the defendant, specifically referred to in the certificate of the defendant accompanying the letters of Moulton as "the contract of reinsurance made and entered into by and between the Order of Washington, of Portland, Oregon, and the Western Life Indemnity Company of Chicago, Illinois, on the 15th day of February, A. D. 1908," that agreement was not introduced in evidence by the plaintiff. Not only so, but the bill of exceptions shows that it stoutly resisted introduction of any evidence whatever of that agreement on the part of the defendant. The agreement mentioned was evidently that embodied in "Exhibit A," already quoted, and in order to complete the evidence of the contract pleaded by plaintiff, so far as it depends upon the letters and certificate which he

offered in evidence, it was incumbent upon him to produce the agreement referred to in those documents. It is a rule of construction of contracts that, where an instrument refers in terms to another instrument as containing part of the stipulation between the parties, that other instrument is itself a part of the contract between the parties, and must be produced, in order to fully substantiate the allegation regarding the agreements of the contracting parties. *Bradstreet* v. *Rich,* 74 Me. 303; *In re Commissioners of Washington Park,* 52. N. Y. 131; *Casey* v. *Holmes,* 10 Ala. 776.

At best, the plaintiff introduced only part of his evidence regarding the contract binding the defendant, whatever it may have been, whether directly with him or indirectly with him, as one made for his benefit by the Order of Washington. On account of the action not having been brought in the name of the real party in interest, for the reason that the testimony is not sufficient within the statute of frauds to prove the contract alleged in the complaint, and also because of the omission of the contract alluded to in the documents by which the defendant sought to bind the plaintiff, the evidence was insufficient to authorize the submission of the cause to the jury; and hence the judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.    REVERSED.

Mr. Justice MCBRIDE did not participate in the decision of this case.

---

Argued February 28, decided March 19, 1912.

## ON REHEARING.

[122 Pac. 38.]

For appellant there was a brief over the names of Messrs. *John H. & A. M. Smith* and *Edward & A. R. Mendenhall,* with an oral argument by *Mr. John H. Smith.*

For respondent there was a brief over the names of *Messrs. Charles W. & George C. Fulton,* with an oral argument by *Mr. George C. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

This case was originally submitted on briefs without oral argument, and a decision was rendered reversing the judgment of the circuit court and remanding the cause for further proceedings. (117 Pac. 973). On motion of the plaintiff a rehearing was granted, and counsel have been heard orally.

In pursuance of some oral stipulations made in the circuit court between counsel, but of which no memorandum appears in the record before us, counsel for defendant at the argument on rehearing waived the question of whether the plaintiff is entitled to recover in his own name on an instrument providing for payment of money to his wife and not to him in any event. The principal contention presented by plaintiff on rehearing was that the circular letter dated Chicago, February 22, 1908, addressed generally "To the Comrades of the Order of Washington," with the peroration "Come with us, live with us, die with us, you will never regret either. Faithfully yours, George M. Moulton, President"—quoted in our former opinion, is itself sufficient proof of the allegations of the complaint to take the case to the jury as against defendant's motion for a nonsuit.

10. Such a motion being in effect a demurrer to the evidence of the plaintiff, it is the duty of the court to consider all the testimony and to construe the writings, and all of them, introduced by plaintiff in support of his case. Adverting to the allegations of the complaint which are quoted in the former opinion, we find that, according to plaintiff's contention, the defendant bound itself absolutely at all events to the performance of all the things to be done by the Order of Washington. The circular letter in that respect merely proposes on receipt

of a certain payment to issue a formal agreement or guaranty binding the company to fulfill the obligations of the order "until such time as a policy for an equivalent amount can be issued on our forms and at our premium rates in accordance with the provisions of the reinsurance contract entered into between the Order of Washington and this company." This conditional offer is not proof of the absolute liability alleged in the complaint. The sum and substance of this circular letter is that the membership of the Order of Washington is informed that measures have been inaugurated looking to a nova-tion, whereby the order is to be released from its obliga-tion to its members, who are to accept the company, instead of the order, and the company is to assume the obligations in question in consideration of specified pay-ments to it by the individual members of the order. It invites the comrades of the order to participate in the proposed novation, all the time referring to the rein-surance contract between the company and the order as the standard by which the liability of the company is to be ultimately measured. The circular is nothing more than negotiation on the part of the company and does not amount to a contract.

11. Even construing it as an offer, it points out as part of the offer that the contract on the part of the company must be in the form of a writing to be attached to the membership certificate, embodying particular con-ditions. Under such circumstances there is no contract until the offer is accepted and the writing executed and delivered. *Stanton* v. *Dennis* (Wash.), 116 Pac. 650; *Ferre Canal Co.* v. *Burgin,* 106 La. 309 (30 South. 863); *Donnelly* v. *Currie Hdw. Co.,* 66 N. J. Law, 388 (49 Atl. 428). The plaintiff cannot accept the part of his offer, if it be one, which is favorable to his contention, and reject the remainder, if he expects to bind the defendant.

12. But we are not left in the dark about how the plaintiff construed the circular letter or what he did in

pursuance thereof.   By his own testimony, in speaking of the certificate of March 21, 1908, quoted in the former opinion, he says he received it, attached it to his policy, and kept it.   Under his own statement he must be held to have accepted it.   This certificate, in plain words, states that the company assumes the obligations of the order to the plaintiff "to the extent and in the manner as are set forth in a certain contract of reinsurance made and entered into by and between the Order of Washington of Portland, Oregon, and the Western Life Indemnity Company of Chicago, Illinois, on the 15th day of February, A. D. 1908."   This agreement between the order and the company thus became a governing part of the contract by novation between the plaintiff and the defendant. *Donnelly* v. *Adams,* 115 Cal. 129 (46 Pac. 916).   Whether the defendant contracted with the plaintiff in the absolute terms averred in the complaint depends upon   the provisions of the contract between the order and the company, and the case of plaintiff in the testimony is not made out without it.

13. The plaintiff was not bound to accept the offer of the defendant in lieu of the promises of a moribund insurance order; but, having accepted, he cannot adopt the part favorable to him and reject the remainder.

14. The plaintiff has declared upon an alleged contract.   His evidence must correspond to his allegations, if he would prevail on the general issue.   Furthermore, if he would establish a liability against the defendant, he cannot stop short of disclosing to the court all the conditions upon which the liability was assumed and by which it was to be measured.

It is unnecessary to notice the numerous other assignments of error.   The motion for nonsuit should have been allowed.   We adhere to the former opinion.

REVERSED.

Former opinion adhered to.

MR. JUSTICE MCBRIDE did not sit in this case.