LAND, J.
 

 The judgment of the lower court recognized plaintiff individually and as testamentary executrix of her deceased husband, James Thom, as the owner of certain property situated at the corner of Mercier street and Lake avenue near West End in the city of New Orleans.
 

 The defendant has appealed.
 

 The widow and testamentary executrix of James Thom has instituted the present suit to have certain property, of which the defendant, James Cornelius Thom, is the owner of record, declared to be the property of her deceased husband and of his succession.
 

 Plaintiff relies upon the copy of a counter-letter, the original of which she alleges was signed by the defendant. The copy reads as follows:
 

 ■ “April 21, 1926.
 

 “Ground and property, Lake Ave. and Mercier street, West End, is not property of James C. Thom, not bought with the money of James C. Thom, not owned by James C. Thom, bought with the money of James Thom, owned by James Thom, on my name for convenience.
 

 “[Signed] James C. Thom. “Arthur Harmeyer.
 

 “Lionell Abedie.”
 

 On the trial of the ease, the defendant’s father, Charles Thom, produced a document, to which he swore that he had signed his son’s name without the latter’s knowledge or consent.
 

 This document reads as follows:
 

 “New Orleans, 4-28-26.
 

 • “I, the undersigned, give to my uncle, James Thom, property located at West End, which he previously purchased for my brother, Lawrence O. Thom, and myself.
 

 “[Signed] James C. Thom.
 

 “A. A. Harmeyer.
 

 “Lionel E. Abadie.”
 

 It is apparent that the first document, of date April 21, 1926, is a eounterletter, and is in due form.
 

 If this document is genuine, the title of defendant to the property in dispute has been divested as simulated, and belongs to the succession of James Thom, who died testate and without forced heirs in the city of New Orleans, April 30,1926.
 

 In an olographic will, of date February 11, 1926, decedent instituted the plaintiff, his surviving widow, as universal legatee, and necessarily she has acquired the ownership of the property in controversy, if the document relied upon was executed by defendant.
 

 If the second document, of date New Orleans, 4-23-26, is genuine, it is null and void, as it purports to be a donation inter vivos of immovable property by private aet,! in violation of article 1536 of the Civil Code.'
 

 We might dismiss this second document’ from further consideration, had not Charles Thom confessed on the witness stand that he forged the same by signing his son’s signature to it without his knowledge and his consent.
 

 The attempt of this witness to misappropriate his dead brother’s estate through a false and fraudulent instrument is duly confirmed by the defendant, his own son, who denied his purported signature when he testified as a witness in the case.
 

 It is immaterial that Charles Thom obtained the genuine signature of the witnesses, Arthur Harmeyer and Lionel Abadie, to the forged instrument. The defendant was not present at the time this fraudulent document was signed by these witnesses, who accepted as true, when they affixed their signatures, the false representation of Charles Thom that defendant had previously signed the instru: ment before its presentation to them by him. The good reputation of these witnesses and their genuine signatures added nothing whatever to the authenticity of this spurious and tainted document. . .
 

 The only issue in the case, therefore, is whether or not the first document, or the eounterletter, was executed by defendant
 

 
 *651
 
 The evidence of at least four witnesses is to the effect that James Thom, during his last illness, obtained a counterletter from the defendant, James Cornelius Thom, admitting the ownership of the former to the property-in dispute.
 

 '. A short while before his death, James Thom called his brother, Charles, to his bedside one morning and requested that he obtain the necessary counterletter from his son, James Cornelius Thom.
 

 This was assented to, and the same night Charles and his son appeared at the home of James Thom for the purpose of executing the counterletter, but postponed drafting it until the following night, as writing materials were not then available.
 

 It was suggested by Charles Thom that they prepare the counterletter at his home and bring it back with them.
 

 . Both returned the following night. The defendant, James Cornelius Thom, took the document from his pocket and handed it to James Thom. Defendant admitted that he had prepared and signed the document, upon being questioned by his uncle. After reading the counterletter, James Thom returned it to his nephew with the request that he obtain the necessary witnesses to his signature.
 

 The next night, Charles Thom and his son, James Cornelius, produced a counter-letter duly attested by witnesses. It was read aloud by James Thom, and the names of the witnesses were announced by him. That the counterletter admitted the ownership of the property in James Thom was clearly-understood by the witnesses present, who heard its contents read.
 

 ‘ James Thom retained the counterletter for several days, when he telephoned to his 'brother, Charles, to call for the document in order that it might be placed on record. At this juncture, Mrs. Thom, acting through fear as to the safety of the document, copied the counterletter on brown or wrapping paper, as no other writing material was at hand. Mrs. Cook, a witness of accepted credibility, has testified to all of the above facts. She read the counterletter as it was being copied by Mrs. Thom, and compared the copy-with the original at the time. These witnesses identify the copy introduced in evidence as a true copy of the original counter-letter, of date April 21, 1&26.
 

 The testimony of Mrs. Cook bears the hallmarks of truth and honesty, and was accepted as trustworthy by the trial judge. Her testimony is corroborated also by the surrounding circumstances of the case, which we do not find it necessary to detail, as the evidence before us establishes to our satisfaction the fact that defendant executed the counterletter in question.
 

 Charles Thom received the countérletter from his brother, and promised to record it, but admits that he did not place it on record and never intended to do so. The reason why neither of these documents was recorded by this witness is apparent.
 

 The signatures of the witnesses to the first document, or counterletter proper, had been forged by this witness, and its execution could not be proved for the purpose of recordation, although the document bore the genuine signature of the defendant. The signatures of the witnesses to the second, document were genuine, as testified to by them, but the signature of the defendant to this document had been forged by this witness, and had been made by him out of the presence of the subscribing witnesses.
 

 The proof of its execution was not possible, and therefore the registry of this document could not be made. The first document was evidently destroyed -by Charles Thom after he had received it for recordation.
 

 The testimony of this witness was repudiated by the trial judge, and justly so, in our opinion. The defendant, as his only witness,
 
 *653
 
 is flatly contradicted by Mrs. Thom and her witnesses, Mrs. Cook, Dr. Deibel, and Miss Taquino, as to his statement that he did not hear of a counterletter in this case until after his uncle’s death. The presence of defendant and his father at the home of James Thom for three successive nights, defendant’s production of the counterletter there on two occasions, and his acknowledgment of its execution, are facts established„by plaintiff and her witnesses with clear legal certainty.
 

 The copy of the counterletter was clearly admissible, after proof of the loss of the original and proper identification of the copy. R. C. C. art. 2280; Willett v. Andrews, 106 La. 310, 30 So. 883.
 

 We find no error in the judgment appealed from by defendant.
 

 Judgment affirmed.