Whiting Foundry Equipment Company v. L. K. Hirsch.

Gen. No. 12,038.

1. ARGUMENTS—*when irregularity in order of, will not reverse.*
Irregularity in the order of the arguments to the jury will not re-
verse unless it appears that injury has resulted.

2. CONTRACT—*when cannot be repudiated.* A contract for the
delivery of scrap from time to time cannot be repudiated by the
purchaser on the ground that the deliveries were not up to contract,
where by the course of dealing the seller had from time to time been
permitted to substitute scrap conformable to agreement; nor can
such repudiation, be predicated upon the previous request thereto-
fore made by the shipper where such request had been denied by the
purchaser and the contract continued under.

Action of assumpsit.    Appeal from the Circuit Court of Cook
County; the Hon. EDWARD F. DUNNE, Judge, presiding.    Heard in
this court at the October term, 1904.    Affirmed.    Opinion filed July
3, 1905.

PARKER & HAGAN, for appellant.

GOODRICH, VINCENT & BRADLEY, for appellee; WARREN
NICHOLS, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

In this case a judgment was rendered in favor of the
appellee against appellant in the Circuit Court of Cook
county for $361.50 and costs on the verdict of a jury.
From this judgment the appellant, the defendant below,
has appealed to this court, assigning as error the improper
admission and exclusion of evidence, the giving of erroneous
and refusal of proper instructions, the denial of motions
for a new trial and in arrest of judgment, the inconsistency
of the verdict with the weight of the evidence and the law,
and irregularity in the order of argument to the jury.

This last matter was within the discretion of the court,
and we should not interfere with the judgment on account
of any such irregularity even if it existed, unless it appeared
that the appellant had been injured thereby.

The other objections raised to the judgment can be best

considered in connection with a brief discussion of the facts and the merits.

The plaintiff and appellee, Hirsch, was an established dealer in scrap iron. His business involved or included buying scrap iron from such sources, far or near, as he could get it from, and reselling it at a profit, and apparently often, as would be natural, forwarding it to purchasers in the car lots in which it was shipped to him or at his order on his purchase. The defendant and appellant was a foundry company using scrap iron and doing business at Harvey, Illinois. February 27, 1901, the defendant wrote to the plaintiff ordering 350 tons No. 1 R. R. or machinery cast scrap (a term apparently well understood in the scrap iron trade), to be free from certain things evidently common in scrap iron and considered objectionable in such as is bought for foundry purposes. The order concluded: "Delivery to be made in March, April, May, June, July and August, 1901, in equal quantities each month. Price and terms $13.00 per ton, f. o. b. Harvey, Sixty Days. Ship to us Harvey, Ill., as above." March 1st the plaintiff, Hirsch, acknowledged the receipt of the order and accepted the same as satisfactory, excepting that the price was to be $13 net ton instead of $13 a ton. The letter of acknowledgment concludes: "I have inserted the word 'net.'" As to the exact meaning or effect of this change it is not necessary for us to inquire, as no objection was made to the insertion and the plaintiff went ahead under the contract thus made and shipped material as follows: By March 16, 1901, the plaintiff had shipped, presumably from various points, three carloads of scrap containing about 85 tons, to the defendant, who had rejected it all as not up to the quality called for by the contract. But the defendant said nothing then about annulling the contract, and on March 19 received and accepted another carload, containing about 18 tons, and shortly afterward received and accepted about 24 out of 27 tons contained in another car. This 42 tons defendant then notified plaintiff was all it could handle in March. The defendant reminded plaintiff that the scrap was to be

shipped in equal quantities monthly, and also expressed a hope that no more of the sort of scrap which it had rejected from the 27-ton carload would come, as its handling in the manner required by sorting was too inconvenient. The plaintiff, as far as appears, made no objection to the rejection of the unsatisfactory material, or to substituting other scrap for it. April 1 the defendant received from the plaintiff and accepted two carloads of scrap, aggregating over 50 tons, and at the same time received notice from the plaintiff that another car was on its way. In acknowledging the receipt of this notice, it wrote: "Do not ship any more this month, i. e., in April, because we cannot take care of it." This car, of something over 16 tons load, arrived apparently about April 10 and was accepted. All this scrap, which by agreement of the parties seems to have aggregated 109 tons, was paid for by defendant, and no more was sent by plaintiff or seems to have been desired by defendant before May 20, at which date the defendant wrote to the plaintiff to ship one car of scrap to apply on the order, requesting careful attention to the quality, and suggesting that the price above the market which they were paying should insure good material. On May 20 and again on May 22, a car was shipped, and on May 25 received, but rejected by the defendant. Defendant wrote plaintiff on that day that these carloads were rejected, and added: "We  *  *  * insist that when shipping any more scrap to us, you take some steps to assure yourself that scrap is No. 1 before sending it to us."

We think that the course of dealing to this point, culminating in this letter, left the contract, after the sending of this letter by defendant to plaintiff, in force, no suggestion of cancellation or rescission having been made on account of the quality of the scrap, but the right of rejection on inspection having been exercised by one party and admitted by the other. We think, moreover, that the course of dealing and correspondence is inconsistent with the exercise of any right to cancel or rescind the contract on account of more scrap not having been shipped during the month of

May or after April 10. It is unnecessary, therefore, for us to discuss whether the sending of inferior scrap by the plaintiff on May 20 and 22 would have authorized the rescission of the contract by the defendant on its reception and before the writing of its letter of May 25. Moreover, we think that it is also unnecessary to consider whether the strict enforcement of the contract as to the quantities and time of delivery had not been so far waived by defendant as to prevent a rescission of the contract on that score, even if without further correspondence the plaintiff had neglected to make up the stipulated amount of monthly shipments by sending material of the required grade before June 1,—for on May 27, apparently without receiving or waiting for any answer to its communication of May 25, the defendant refused to go on with the contract or to accept any more scrap under it. It was then, in our opinion, too late for it justifiably to do this on account of the quality of the material received on May 25, even if it would have been so justified before writing the letter of that date, which we much doubt.

The letter of May 27 ran: "In view of the fact that it seems an impossibility for you to furnish material conforming to our specifications, please cancel balance of contract. We feel that this is the only way out of the difficulty. We cannot be constantly bothered with cars coming in here loaded with such material as you ship us, and feel that above is best for both parties. In fact it was your own suggestion. *Please acknowledge receipt of this and do not ship more scrap to us.* Regretting that you could not supply us with desirable iron," etc. We agree with counsel for plaintiff that although couched in polite phrase, this was a peremptory refusal to go on with the contract.

It is urged that as the plaintiff wrote on May 31, that although he had tried before to cancel the contract (apparently between April 10 and May 20), he could not consent then to do so, because he had himself incurred obligations in providing for it, and gave notice of another shipment, the contract was kept alive and must therefore be

proven to have been complied with as to time of delivery before plaintiff can recover for its breach or repudiation. Whatever might have been the force of this suggestion, had the defendant then receded from its letter of May 25, or placed its further repudiation and rejection of the contract upon a different ground, it has, in our opinion, no basis under the circumstances that actually exist, for by letter in reply to this communication of the plaintiff, the defendant simply re-affirmed its determination, as expressed in its letter of May 25, to receive no more scrap of any kind, because material sent had not been in accordance with the specifications.    We think this the plain meaning of the reply, and that it placed the repudiation of the contract fairly on the letter of May 25, and as dating from that day.    No advantage can therefore be taken of the desire of the plaintiff to keep it alive after that time.    Under this view of the matter involved we do not think that Frost v. Knight, L. R. Exch. 111, and Kadish v. Young, 108 Ill., 170, and still less Dingley v. Oler, 117 U. S., 409, state a rule which is applicable to the case at bar, and do consider that Carney v. Newberry, 24 Ill., 203, and Roebling's Sons Co. v. Lock Stitch Fence Co., 130 Ill., 660, and L. S. Ry. Co. v. Richards, 152 Ill., 59, contain doctrine declared by the Supreme Court, which shows that to leave the question to the jury under the instructions which were given as to whether the defendant wrongfully and unjustifiably repudiated its contract with the plaintiff by its letter of May 27, was at least as favorable action by the trial court as defendant was entitled to.

It may indeed be said that it would have been difficult for the jury, under instructions 6 and 7, given at plaintiff's request, to have found that defendant was not liable to the plaintiff, if they found that in May, June, July and August, the market price was less than the contract price, and that these instructions in effect were instructions to render a verdict against the defendant.    But in the view which we have indicated that we hold, we nevertheless do not see how the instructions could have been properly refused.

Of the three instructions which, although requested by the defendant, were refused, the second could not have been given consistently with the view of the law taken by us and taken also by the trial judge and expressed in instructions 6, 7 and 8. The other two were, in our opinion, sufficiently covered by the third instruction given at the request of the defendant in connection with those given at the request of the plaintiff.

There was plainly evidence in the case, if the jury were at liberty to find the defendant liable at all, justifying the amount at which they placed the damages for the repudiation of the contract. The amount fixed on was evidently the amount of profit which they believed from the varying evidence the plaintiff lost thereby, and there was sufficient basis for it in that evidence.

We see no error in the admission of evidence either as to the market value of scrap at Chicago, and consequently, freight charges being considered, at Harvey, during the continuance of the contract, or as to the method by which the plaintiff obtained or contracted for the scrap which he tendered defendant. If the market price prior to May was not material, its proof was not injurious or reversibly erroneous, and the price in May, June, July and August was plainly admissible on the amount of damages.

Evidence as to the method of conducting the business between plaintiff and defendant was material, as tending to construe the contract. That method involved the way in which the material was obtained and shipped by the plaintiff. It was competent in proving this to show that the sending of material which was properly rejected, was not a wilful or grossly negligent attempted violation of the contract by the plaintiff, but a transaction explicable without such culpability on the part of the plaintiff by the default on the part of his vendors, from whom the material was directly shipped. Such a default of course would furnish no excuse for non-compliance with the contract on plaintiff's part by furnishing the grade of scrap iron required in substitution for that prop-

Whiting Foundry Equipment Co. v. Hirsch.

erly rejected; but it was material to prove, in order to throw light on the question of such wilful violation of his contract or intentional attempt at unfair dealing as might warrant the other party in completely rescinding it.

We think substantial justice has been done in this case, and we find no reversible error in the record. The judgment will therefore be affirmed.

*Affirmed.*