Argued October 13, affirmed November 17, 1925.

# CHARLES B. COPPOCK ET AL. *v.* L. H. ROBERTS.

## (240 Pac. 886.)

**Trial—Vendor and Purchaser—Vendor's Answer Held Sufficient —Where Vendor's Answer to Suit to Recover Part of Purchase Price Set Up Agreement to Reinstate Contract of Sale, Equity Has Jurisdiction.**

1. Under Section 390, Or. L., authorizing, in action at law, answer pleading equity, in vendees' action against vendor to recover part payment on ground of mutual rescission, answer alleging vendor's assignment of sale contract to vendees to clear his title for purpose of obtaining loan, agreement that on securing of loan new contract of sale similar to the old should be delivered to plaintiffs and become effective, and refusal of plaintiffs to accept and execute the new contract, and praying that they be required to specifically perform their agreement to reinstate the sale contract, was not demurrable for insufficiency of facts, nor did the trial court err in hearing the case as a proceeding in equity.

**Vendor and Purchaser—Evidence Held not to Show Mutual Rescission of Contract.**

2. Evidence *held* not to show mutual rescission of sale contract.

**Parties—Right to Rescind Contract cannot be Based on Failure of Defendant to Perform Agreement With Third Party not a Party to Suit.**

3. Plaintiff vendee's right to rescind cannot be urged on failure of defendant vendor's alleged guaranty to have note of plaintiffs in favor of third party secured by second mortgage on the farm sold, where third party was not a party to suit, so that matter of alleged guaranty could not be adjudicated.

**Contracts—Mutual Rescission Requires Consent of All Parties.**

4. In order to effect rescission by a subsequent mutual agreement, it is essential that contract to rescind should receive assent of both or all parties to original contract.

**Equity—Legal Remedy must be Efficient.**

5. One's right to resort to equity for relief is not precluded by an available legal remedy, unless the legal remedy in respect to the final relief and mode of securing it is as efficient as the remedy which a court of equity can afford under the same circumstances.

Actions, 1 C. J., p. 1053, n. 89 New.
Contracts, 13 C. J., p. 600, n. 21, p. 601, n. 37, 38, 39.
Equity, 21 C. J., p. 50, n. 32, p. 54, n. 66, 67.
Specific Performance, 36 Cyc., p. 543, n. 1, p. 789, n. 42.
Vendor and Purchaser, 39 Cyc., p. 1355, n. 27, p. 1357, n. 43.

4. See 6 R. C. L. 921.
5. See 10 R. C. L. 273–276.

From Marion: GEORGE G. BINGHAM, Judge.

Department 2.

The plaintiffs commenced an action against defendant to recover the sum of $4,750 for money had and received by defendant for plaintiffs' use.

The action was founded upon a claim of rescission of a certain contract of August 31, 1920, by the terms of which Charles B. Coppock purchased from defendant, L. H. Roberts, a tract of land located near the town of Turner, Marion County, Oregon, the agreed purchase price being $18,500, by agreement the price mentioned in the contract was $19,000, $500 being credited on the contract. Four thousand two hundred and fifty dollars was also credited on the contract on account of the cancellation of a debt due from the defendant to plaintiff Chas. B. Coppock, for the purchase price of one-third interest in a certain timber tract. The balance was payable, $5,000 on or before five years from the date of the contract, $9,250 on or before ten years from such date, all deferred payments to draw interest at the rate of 6 per cent per annum from October 1, 1920.

The defendant interposed an answer asking equitable relief and claiming that about October, 1921, it was understood between plaintiffs and defendant that plaintiff Charles B. Coppock would make application to the Federal Farm Loan Association for a loan of $10,000, to be applied to the payment of the balance due defendant on the purchase price of the premises, defendant agreeing upon completion of the loan for that amount to extend credit to Coppock for the sum of $855, interest due on the contract, together with other sums theretofore advanced by defendant to plaintiffs in the amount of $2,513, to be evidenced by

the unsecured note of plaintiffs, the Coppocks agreeing that while credit was extended they would not mortgage or encumber the livestock, tools and implements used by plaintiffs on the farm, the larger portion of such personal property having been purchased with money advanced by defendant.

Coppock made application for the loan and about April 19, 1921, also made application to the California Joint Stock Land Bank of San Francisco for a loan in the sum of $10,000, for the purpose of paying defendant the balance due on the purchase price of said premises and securing his title to said land. About May 23, 1922, these applications were refused and the Joint Stock Land Bank of California offered to make a loan on the premises in the sum of $8,000, provided the loan be made in the name of this defendant, instead of plaintiffs, and that at the request of plaintiffs, defendant made application for, and secured a loan of $8,000 from the California Joint Stock Land Bank.

At the time the officers of the bank required that the contract of sale and purchase, then outstanding between plaintiffs and defendant, be redelivered to defendant, so as to clear the title to the land in defendant. Accordingly the plaintiff delivered the contract to defendant solely for the purpose of complying with said request, and aiding in the procuring of such loan; it being agreed at the time between the plaintiffs and defendant that defendant was to execute another contract in form similar to the one previously held by plaintiffs, covering the same terms and conditions of sale, which contract was to bear date immediately after the date of the mortgage of the California Joint Stock Land Bank with the same price and credits thereon, including in such credits, $4,250 for the undivided one-third interest in the timber claim deeded

by Retta J. Pemberton to defendant under the following circumstances; Coppock agreeing with Retta J. Pemberton that she was to accept the note of plaintiffs in the sum of $4,250 until such time as plaintiffs secured title to said premises, and thereupon said plaintiffs agreed to execute and deliver to said Retta J. Pemberton a second mortgage on said premises, and thereupon said plaintiffs agreed to execute and deliver to said Retta J. Pemberton a second mortgage on said premises, securing her for her said loan of $4,250.  Under the contract plaintiffs were to have possession of the farm.

Defendant further alleges that according to the terms of the agreement, defendant, immediately upon securing the loan from the California Joint Stock Land Bank caused a contract form to be drafted and prepared similar to the contract first made between plaintiffs and defendant, and duly signed and executed same and offered to deliver the contract to plaintiffs. That plaintiffs delayed accepting the contract on the pretense that they were endeavoring to secure the $2,000 from other sources and obtain their deed, until on or about the first day of September, 1922, when plaintiffs positively refused to accept the contract; that the contract of sale and purchase was never rescinded by plaintiffs and defendant by mutual consent, or otherwise, and that it was the purpose and intention of plaintiffs in delivering the same to defendant, and of defendant in accepting said contract, that the same should remain in full force and effect as the basis of a new contract between plaintiffs and defendant in accordance with the understanding and agreement with the said California Joint Stock Land Bank above mentioned; that the defendant has at all

times been ready, able and willing to deliver said new contract.

Defendant prays that plaintiffs be required to specifically perform their contract and to execute a new contract in accordance with the terms of the agreement. A copy of the contract of sale of the timber claim by Mrs. Retta J. Pemberton and Charles B. Coppock to defendant L. H. Roberts, also a copy of the contract of the sale of the farm of August 31, 1920, were attached to defendant's answer.

Plaintiffs demurred to the answer upon the grounds of insufficiency of facts, which demurrer was overruled. Thereafter plaintiffs replied to the answer denying the allegations thereof, except as set forth in the complaint and further pleaded that the answer was insufficient to confer jurisdiction upon a court of equity.

The cause was tried as an equity suit and a decree was rendered in favor of defendant, requiring the plaintiffs to comply with the terms of their contract.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Smith & Shields,* with an oral argument by *Mr. W. C. Winslow.*

For respondent there was a brief and oral arguments by *Mr. John H. McNary* and *Mr. William H. Trindle.*

BEAN, J.—Plaintiffs assign error of the trial court in hearing this cause as a proceeding in equity and assert that the demurrer of plaintiffs to the defendant's answer should have been sustained. Error is also predicated upon the entry of the decree in favor of respondent.

116 Or.—17

1. Section 390, Or. L., provides, among other things, that in an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matters up by answer without the necessity of filing a complaint on the equity side of the court. The application of this provision in this suit is challenged by the plaintiffs.

There is no dispute but that after the execution of the contract of sale was executed by plaintiff and defendant, in order for the defendant Roberts to obtain a loan on the land, which was for the benefit of Coppock and was to satisfy the payment for the land to the extent of the loan, that the plaintiffs by mutual consent of the parties assigned the contract of sale to defendant Roberts in order that it might be shown that there was a clear title to the land in him.

At the time of the assignment it was agreed between the parties that Roberts would execute with plaintiffs a new contract of sale of the land similar in all respects to the former contract, covering conditions of sale as formerly stipulated in the contract assigned to Roberts. Such new contract of sale was to be executed and delivered as soon as a loan, then being negotiated by Roberts from the California Joint Stock Land Bank of San Francisco, could be secured.

At the time of the commencement of the action at law the situation was that the plaintiffs claimed a rescission of the contract of sale of the farm, while the defendant claimed that the contract was practically suspended during the time of making the loan, and that according to the written stipulations of the parties, made at the time the arrangements for the loan were perfected, a new contract similar to the

old one should be executed and delivered to plaintiffs and be in full force and effect. The effect of defendant's answer was to secure a reinstatement of the terms of the original contract of sale. In this condition the controversy between the plaintiffs and defendant could not be tried or adjusted without bringing into the case the matter of reinstatement of the original contract, or in form the execution of the new contract of sale.

If the claim of defendant is true, he is entitled to the relief of having the original contract of sale reinstated. Such relief arose out of facts requiring the interposition of a court of equity. They were material to the defendant's defense. A new contract of sale, pursuant to the written agreement of the parties made on July 20, 1922, paving the way for obtaining the loan, could not be adjudged in an action at law. The enforcement of the contract between the parties, which was to serve their purpose during the interim between the time the contract of sale was assigned to Roberts and the time when the loan would be secured, could only be obtained in a suit in equity: 25 R. C. L. 202, § 2; *Acton* v. *Lamberson,* 102 Or. 472, 483 (202 Pac. 421, 202 Pac. 732); *Crossen* v. *Campbell,* 102 Or. 666 (202 Pac. 745); *James* v. *Wards,* 96 Or. 667 (190 Pac. 1105); *Lind* v. *Boulin,* 97 Or. 332 (190 Pac. 1103); *Mendelsohn* v. *Mendelsohn,* 104 Or. 281, 287 (207 Pac. 158); *Gellert* v. *Bank of Cal. Nat. Assn.,* 107 Or. 162, 184 (214 Pac. 377); *Anderson* v. *Hurlbert,* 109 Or. 284 (219 Pac. 1092). There was no error in overruling plaintiff's demurrer to defendant's answer.

2. In order for plaintiffs to prevail it was necessary for them to sustain their contention that a mutual rescission of the contract of sale took place at

the time of a conversation between the parties at Dr. Pemberton's office in Salem, Oregon.

Dr. Pemberton, as a witness for plaintiffs, testified thus in relation to such discourse:

" * * there was two or three propositions. None of them very definite, none of them accepted and none of them very clear, but finally Mr. Roberts told him to make a list of his stock and implements and what improvements he had put on the place and come back and they would talk it over and have some kind of a settlement."

The plaintiff, Charles B. Coppock, as a witness testified to the effect, that in the fall of 1921, the situation was such that he could not meet his obligations on account of the crops being poor. He was then owing the defendant, in addition to the balance of the price of the land, $1,000 which Roberts had paid on a tractor to use upon the farm, interest due and taxes paid by Roberts amounting to $2,513, for which he gave Roberts an unsecured note. "I asked to be released from the contract, and get a settlement." Roberts said he would think the matter over. Coppock further stated: "I told him that inasmuch as he had agreed to deliver me a contract at the time the loan was made, I didn't feel like I wanted to go ahead. I told him I had lost confidence in him and didn't want to go ahead." "I was afraid to say anything to him for fear he would attach everything I had and leave these other men (creditors) out in the cold. So I went and put the chattel mortgage on the stock." Roberts said he was going away to the coast. The next time he saw him Roberts said the only thing he had to do, was for him to go ahead with the contract, just as it read. When he told Roberts about the chattel mortgage, Roberts was

"put out." "I told him I would move off the place and give him my stock and implements, if he would come on and take it, I would move off and give it to him. * * He didn't ever come out to the place after that." Coppock states: "I haven't seen Mr. Roberts since that to do any business with him." (Referring to the conversation with reference to the chattel mortgage.) The testimony does not show that Coppock and Roberts ever consummated any settlement or arrangement after the circumstances mentioned transpired.

3. Plaintiffs also contend that, based upon Roberts' failure to perform, they were entitled to rescind the contract. The failure claimed relates to an alleged guaranty of Roberts to have a note of $4,250, executed by plaintiffs, in favor of Mrs. Retta J. Pemberton secured by a second mortgage on the farm, which is the subject of the contract of sale between Roberts and the Coppocks.

Mrs. Pemberton is not a party to this suit and the matter of the alleged guaranty cannot be adjudicated in this cause. Much of plaintiff's testimony is directed to this matter which is outside of the case. There is no foundation for the contention that Roberts did not comply with the terms of his contract with the Coppocks. There is not a scintilla of testimony to show that Roberts assented to the proposition made by Coppock, or made any "settlement" with him.

The word "settlement" in this connection, as used by Roberts, appears to have meant only that he was endeavoring to make some arrangement to provide for the payment, or collection of the amount due him from the Coppocks. There was no "settlement" contemplated or necessary in order to arrive at the

amount due Roberts. That was all in writing and is not contested. In short, there was no meeting of the minds of the parties, or any mutual agreement for a rescission of the contract in question.

Dr. Pemberton, on cross-examination testified in relation to Mr. Coppock giving up the place to Roberts that—"I think Mr. Coppock decided that he couldn't make it go."

4. In order to effect a rescission of a contract by a subsequent mutual agreement, it is essential that the contract to rescind should receive the assent of both or all the parties to the original contract. Just as in the making of a contract, so in a negotiation for its abrogation or termination, there must be a meeting of the minds of the parties in respect to the proposition that it shall be canceled and also in respect to any terms or conditions upon which the rescission is to be predicated: 13 C. J., p. 601, § 624; *J. P. Gentry Co.* v. *Margolius & Co.*, 110 Tenn. 669 (75 S. W. 959). The request or offer of Coppock to rescind the contract had no effect whatever upon the contract itself, or the rights and obligations of the parties to the stipulation which they had made for the simple reason that the offer was not accepted, except it might be said that by making the proposition to be released from the contract, or for a mutual rescission of the same, Coppock assumed the validity of the contract at that time: 13 C. J., p. 600, § 621; *O'Donnell* v. *Brand,* 85 Wis. 97 (55 N. W. 154); *Parks* v. *Elmore,* 59 Wash. 584 (110 Pac. 381); *Chadbourne* v. *Davis,* 9 Colo. 581 (13 Pac. 721); *A. Westman Merc. Co.* v. *Park,* 2 Colo. App. 545 (31 Pac. 945); *Whiting Foundry Equip. Co.* v. *Hirsch,* 121 Ill. App. 373; *Flynn* v. *Finch,* 137 Iowa, 378 (114 N. W. 1058); *Watson* v. *E. E. Naugle Tie Co.,* 159

Mich. 174 (123 N. W. 589); *Fripp* v. *Fripp,* Rice Eq. (S. C.) 94.

5. Roberts could not have availed himself of a complete remedy in the law action which the plaintiffs commenced. The fact that he could have obtained some relief therein would not preclude him from obtaining complete relief in a court of equity. His legal remedy, in respect to the final relief and also the mode of securing it, would not have been as efficient as the remedy which he sought from a court of equity under Section 390, Or. L., and which such a court, under the circumstances of this case, could grant.

As said by Mr. Justice HARRIS in *Pearson* v. *Richards,* 106 Or. 79 (211 Pac. 167), at page 93 of the Report:

"The fact that a party can avail himself of a remedy in a court of law will not preclude him from obtaining relief in a court of equity unless the legal remedy in respect to the final relief and the mode of securing it, is as efficient as the remedy which a court of equity can afford under the same circumstances: *South Portland Lumber Co.* v. *Munger,* 36 Or. 457, 473 (54 Pac. 815, 60 Pac. 5); *Hall* v. *Dunn,* 52 Or. 475, 479 (97 Pac. 811, 25 L. R. A. (N. S.) 193); *Butson* v. *Misz,* 81 Or. 607, 613 (160 Pac. 530)."

The plaintiffs object to the provision in the decree requiring them to execute a new contract and which provides for paying interest annually upon $14,250. This, however, is not the case, as provision is made in the decree for a credit on the contract of $4,250 as of the date of November 22, 1921. This was on account of the note given by the Coppocks to Dr. Pemberton, which Roberts credited on the purchase price of the farm.

Plaintiffs also suggest that they should be required to pay interest to the government on the $10,000 loan. Whenever the plaintiffs pay any part of the $10,000 loan to the government, that should be credited to them by Roberts. As yet they have paid no part of the loan, neither have they assumed payment thereof, although doubtless it was contemplated that the Coppocks would assume the $10,000 mortgage.

This cause was tried by the late Judge BINGHAM in his usual careful and painstaking manner. The decree is right and is affirmed.    AFFIRMED.

BROWN, COSHOW and BELT, JJ., concur.