Argued May 4, reversed September 6, 1961, petition for
rehearing denied March 28, 1962

# McGRATH *v.* ELECTRICAL CONSTRUC-
TION COMPANY, INC.

364 P. 2d 604
370 P. 2d 231

*Frank Deich,* Portland, argued the cause for appellant. On the brief were Bryson and Deich, Portland.

*Paul R. Meyer,* Portland, argued the cause for respondent. With him on the brief were Norman B. Kobin and Leo Levenson, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Electrical Construction Company, Inc., from a judgment which the circuit court entered in favor of the plaintiff in an action instituted by him to recover $15,275.38 which he averred was the balance due him upon a contract into which he and the defendant had entered. The judgment was based upon a jury's verdict. The defendant, prior to entering into a contract with the plaintiff, had signed an agreement with Portland General Electric Company whereby it (defendant) bound itself to perform for that concern some construction work upon a hydroelectric project near Estacada. After the defendant had entered into that undertaking it granted a subcontract to the plaintiff whereby the latter agreed to perform a designated part of the construction work specified in the contract between the defendant and Portland General Electric Company. In this action the plaintiff alleged that he had performed in full all of the work described in his subcontract with the defendant. He prayed for the recovery of judgment—not in the amount of the contract sum, but upon the basis of quantum meruit, and, in so doing, contended that the engineer in charge of the construction work through unreasonable, arbitrary action and demands had rendered the plaintiff's performance of his contract more costly than it would have been if the engineer had acted reasonably. The

judgment which the plaintiff recovered in the sum of $15,275.38 is the full amount which the complaint sought. The total sum due the plaintiff on the basis of the contract was $13,355.29 and it had been paid to him. But, on the plaintiff's quantum meruit basis the sum due him, as estimated by the plaintiff, was $28,630.67. When we deduct from it $13,355.29, the amount that has been paid, we have $15,275.38 which is the sum for which judgment was sought and recovered.

The first assignment of error challenges the trial judge's ruling which denied the defendant's motion for a directed verdict.

Before the defendant had entered into its contract with Portland General Electric Company it had received two letters from Ebasco Services, Incorporated, one dated August 15, 1958, and the other August 16, 1958. The concern just mentioned was the engineer of Portland General Electric Company, and was in charge of the contemplated work. The letters requested the defendant to submit a bid upon the outlined work and were accompanied with drawings and specifications. Each of the two letters concluded with a paragraph, which, after referring to the work that was the subject of the requested bid, stated that the bid should include:

"* * * all your costs, expense and profit, direct and incidental, for your performance of the work in accordance with the foregoing understandings and the terms in the General Conditions, Specifications and Agreement of the Contract dated May 12, 1958, and all supplements thereto."

Before the defendant submitted to Portland General Electric Company a bid in compliance with the requests from Ebasco Services, Incorporated, for a

bid, it secured one from the plaintiff for the part of the work which became shortly the subject matter of the subcontract between the plaintiff and defendant. Prior to calculating his bid for the subcontract work the plaintiff was given the aforementioned letters, specifications and drawings. He was requested to base his bid as to some of the items shown in the drawings and specifications upon a lump sum basis and others upon a unit basis. The plaintiff's bid complied with that request. After its receipt the defendant incorporated it into the bid which it submitted to Portland General Electric Company and later was awarded the contract. Still later the defendant and the plaintiff entered into a subcontract for the work covered by the plaintiff's bid. As we have seen, the plaintiff contends that he performed in full the subcontract.

The defendant contends that the letters of August 15 and 16, 1958, that made reference to the general conditions of a contract between defendant and Portland General Electric Company and that were handed to the plaintiff for him to use in making his bid were effective to incorporate the general conditions into the contract that arose between him, as subcontractor, and the defendant, as prime contractor.

The general conditions gave to Ebasco Services, Incorporated, the engineers for this project, the usual powers of supervision and inspection that are possessed by engineers upon construction work.

Plaintiff claims that the engineer interfered with him, delayed him and placed additional burdens on him to such a degree that he was forced to perform the job in a manner substantially different from and more costly than had been contemplated. Testimony which he presented supplied many particulars and instances in support of those charges.

The record indicates that the plaintiff originally expected to finish the work in five weeks. As it turned out, more than three months were required to complete the undertaking and the expenses thereof were more than 80 per cent beyond the original figure. This, the plaintiff contends, was due to the arbitrary and unreasonable supervision exercised over him by the defendant and engineer. This unreasonable and arbitrary action, it is claimed, constituted an abandonment of the original contract.

The plaintiff also argues that since the original contract was abandoned and its prices can not be traced to the work he is therefore entitled to recover on the basis of quantum meruit.

The principal defense asserted by the defendant is that all of the work performed by the plaintiff was governed as to price, conditions and quantity by an express contract between the plaintiff and defendant and that the plaintiff has been fully paid in accordance with the contract.

■ The defendant contends, and we agree, that the references made to (1) the general conditions and (2) the agreement between defendant and Portland General Electric Company in the letters of August 15 and 16, 1958, were effective to include the agreement and the general conditions into the contract between plaintiff and defendant. *Cerino v. Oregon Physicians' Service*, 202 Or 474, 483, 276 P2d 397, 401 (1954); *Spande v. Western Life Indemnity Co.*, 61 Or 220, 236, 117 P 973, 979 (1912); 12 Am Jur, Contracts, § 245.

*Spande v. Western Life Indemnity Co.*, 61 Or 220, 236, 117 P 973, 979 (1912) states:

"* * * It is a rule of construction of contracts that, where an instrument refers in terms

to another instrument as containing part of the stipulation between the parties, that other instrument is itself a part of the contract between the parties * * *."

The above rule is quoted with approval in *Cerino v. Oregon Physicians' Service,* supra.

Therefore, the matters contained in the agreement and the general conditions of the contract dated May 12, 1958, between the defendant and the owner must be considered in the interpretation of the contract between plaintiff and defendant.

There is nothing in the record which directly or by inference indicates that the defendant, personally, in any way substantially hindered or delayed the plaintiff in his work. On the contrary, the plaintiff testified that the defendant was "helpful."

"Q Did anyone at Electrical Construction Company ever interfere with your work in any way?

"A I would say no; as a matter of fact, they were helpful."

This leaves only the activities of the engineer as accountable for the delays which the jury found made it impossible for the plaintiff to perform his duties under the contract as originally envisioned by the parties. Thus the plaintiff must, in order to charge the defendant with the consequences of the engineer's activity, rely on an inference to be drawn from the contract or on the relationship between the defendant and the engineer.

The defendant certainly can not be held accountable for the engineer's conduct on any agency theory, for he clearly was not the agent of the defendant. The latter did not hire the engineer, pay him or have any control over him. Therefore, none of the basic requi-

sites for an agency relationship exist. In addition, the defendant was not even responsible for subjecting the plaintiff to the engineer due to the fact that the general conditions of the contract between the defendant and Portland General Electric Company specifically apply, under their own terms, to subcontractors:

"If the Contractor shall cause any part of the work to be performed by a subcontractor, the provisions of this Contract shall apply to such subcontractor and his or its officers, agents or employees in all respects as if he or it and they were employees of the Contractor. * * *"

From the foregoing it is evident that the plaintiff must rely on the contract to bring him within the rule that ordinarily, as between a subcontractor and the contractor who is in control of the general work to be performed, the law places the contractor under an obligation to the subcontractor to make good all losses consequent upon delays in the progress of the work not attributable to the subcontractor himself. *Frank T. Hickey, Inc. v. Los Angeles Jewish Com. Coun.,* 128 Cal App 2d 676, 276 P2d 52 (1954); *Norcross v. Wills,* 198 NY 336, 91 NE 803 (1910); *Walter R. Cliffe Co. v. Du Pont Engineering Co.,* 298 F 649 (1924). This rule, however, is applied against the contractor in situations where the responsibility may be placed on the contractor either because he might have prevented the delay or because the contract was not so phrased as to permit the inference of an intention that responsibility should rest elsewhere.

In *Norcross v. Wills,* supra, the court, while recognizing and commending the above rule, held it inapplicable because the contract expressly provided that the architect was acting as agent of the owner. This case is similar to the one at bar. The subcon-

tractor sued the prime contractor for damages sustained as a result of wrongful delays caused by the architect. Since the contract stated that the architect was the owner's agent the court held that the general rule holding the contractor liable for damages sustained by delays not the fault of the subcontractor did not apply as to acts of the architect. This case, therefore, states in effect that the contractor is not liable to the subcontractor for the acts of the owner's agents.

■ The case at bar is essentially the same situation, with the exception that the contract here does not specifically state that the engineer is agent of the owner. It is generally accepted, however, that the architect or engineer under whose supervision and direction the work is to be performed is the agent of the owner, not of the contractor. 17 CJS, Contracts, § 505(3).

In addition, the agency relationship between the engineer and the owner, rather than between the engineer and the contractor, becomes further apparent from a reading of the contract. For example, the general conditions read:

"The Owner contemplates and the Contractor hereby agrees to a thorough, minute inspection by the Owner, or by any of its agents, of all the work and material furnished under this contract."

The portion of the contract just quoted refers to inspection of the work by "the Owner, or by any of its agents." Ebasco Services, the engineer under this contract, is the agent which this clause provided for. The same section of the contract (C-3 Inspection and Right of Access) goes on to provide:

"When finished work is taken down for the purpose of inspection, the Contractor shall stand all the expense incident thereto in the event that the said work is found defective. The Owner shall pay

> the cost incident thereto in the event that the work exposed is found to be in accordance with the Specifications."

Thus, the contract expressed the intention that the contractor was not to be responsible for the mistakes of the engineer.

■ The rule employed in the Norcross case which is, basically, that the contractor generally must answer to the subcontractor for damages due to delays suffered by the latter and not due to his fault, does not apply to delays caused by the owner's agent; it is, therefore, applicable to this case. It would be grossly unjust to imply that the defendant, under the circumstances, had covenanted with the plaintiff for the performance of the engineer who was the agent of the owner and over whom the defendant had no direction or control whatever.

■ Since it has been established that the defendant is not responsible for the action of the engineer it naturally follows that the latter's conduct could not produce a legal basis upon which the plaintiff, without the consent of the defendant, could abandon the contract. The plaintiff knew, or should have known had he read the general conditions, that the cooperation of the engineer would be essential to his successful performance of the contract. One who makes a promise which can not be performed without the cooperation of a third person is not excused from performance because of inability to secure the required cooperation. *Hensler v. City of Los Angeles,* 124 Cal App 2d 71, 268 P2d 12 (1954); *Sparks v. Cater Electrical Co., Inc.,* 151 Neb 675, 39 NW2d 274 (1949); 6 Williston on Contracts (Rev. Ed.) p 5413; 3 Elliott on Contracts § 1916. In addition, 17 CJS, Contracts, § 505 b. (1)

states generally that where the delay of the subcontractor is not due to the fault of the contractor or his agent the subcontractor is not relieved from his contract. In the absence of a legal ground for rescission, if no option to terminate has been reserved, all the parties to the contract must assent to its rescission or abrogation, and there must be a meeting of their minds. *Garland v. Shrier,* 155 Or 387, 64 P2d 530 (1937); *Coppock v. Roberts,* 116 Or 253, 240 P 886 (1925); *Owen v. Leber,* 112 Or 136, 228 P 927 (1924); 17 CJS, Contracts, § 389. *Garland v. Shrier,* supra, stated the rule as follows:

"It is a rule generally applicable to contracts that, in the absence of an option reserved in the contract granting to one of the contracting parties the right to rescind, the contract can not be abrogated or abandoned by either party without the consent of the other."

■ Thus, in order for the plaintiff to show a rescission or abandonment of the contract between himself and the defendant, since the engineer's conduct does not provide him with a legal basis, he must show that the defendant and he rescinded it. He alone could not do so. The record does not indicate any mutual assent or meeting of the minds contemplating an abandonment of the original contract. At most, the defendant encouraged the plaintiff to continue with the work by saying something to the effect that the plaintiff would be recompensed. According to the plaintiff, he was told, "We will help you get the money. We know it is costing you more money and we will assist you in that area."

These statements do not evidence an intention to abandon the original contract. They may be construed as promises to pay more money to the plaintiff if he

would continue to perform under the contract, but since the plaintiff was already bound to so perform, there is no consideration to support them.

■ A promise not supported by consideration is not enforceable. In *Hoskins v. Powder Land & Irr. Co.*, 90 Or 217, 223, 176 P 124, 127 (1918) the court quoted with approval from Corpus Juris:

> "* * * Thus a promise to pay additional compensation for the performance by the promisee of a contract which the promisee is already under obligation to the promisor to perform is without consideration."

The case of *Jones & Carey v. Risley*, 91 Tex 1, 7, 32 SW 1027, 1030 (1895) is illustrative of this problem. There the specifications required the materials to be subject to the engineer's approval. The masonry subcontractor claimed the right to use a certain type of stone. The prime contractor verbally agreed to pay him the extra cost of using the stone required by the engineer. The trial court instructed the jury that if they found these facts to be true they should find for the subcontractor. In reversing, the appellate court ruled:

> "* * * and since the subsequent promise of Jones and Carey to pay him extra compensation was for the purpose of inducing him to do what he was already bound to do under such written contract, there was no consideration to support the same."

■ The last basis upon which the plaintiff might assert a right to sue the defendant for injuries resulting from the conduct of the engineer, arises from the Indemnity Clause, Section 12 of the Agreement. That clause, after stating that the contractor will save harmless the owner or those connected with him from any and all damages on account of personal injuries

or property damage growing out of the performance of the contract goes on to state immediately thereafter:

> "\* \* \* It is intended by this provision to save harmless the Owner from any and all claims made by employees of Contractor arising out of industrial accidents, as well as all other claims."

The construction of this particular clause of the contract involves the rule of *ejusdem generis*. Basically, the rule provides that when general words follow an enumeration of specific persons or things, the general words are not construed in their widest extent, but are applied only to persons or things of the same general kind or class as those specifically enumerated. In addition, the rule of *ejusdem generis* in contracts is peculiarly applicable where specific enumeration precedes the word "other" followed by general words. *U. S. Fidelity & Guaranty Co. v. Thomlinson-Arkwright Co.*, 172 Or 307, 141 P2d 817 (1943); *Kirkley v. Portland Electric Power Co.*, 136 Or 421, 298 P 237 (1931). The *ejusdem generis* rule, therefore, is particularly applicable in the present case, for the words "all other claims" follow the specific enumeration of personal injuries, property damage and industrial accidents. Hence the words "all other claims" must be restricted and related to personal injuries, industrial accidents and property damage.

Thus, a construction of the Indemnity Clause which would include the type of injury and conduct complained of here is not feasible. The defendant contractor, therefore, need not, per se, bear the plaintiff's burden in this instance.

The only authority upon which the plaintiff bases his right to hold the defendant for his injury is *United*

*States Steel Producing Co. v. Poole Dean Co.* (CCA 9, 1917), 245 F 533. In that case the court held that the defendant, the principal contractor, who subcontracted with plaintiff to do part of the work, could not defeat plaintiff's claim on the theory that the plaintiff was doing work for defendant's principal, the plaintiff having no contractual relations with the principal. While this holding may be perfectly sound it clearly is not authority for the proposition that the prime contractor is to be responsible for any and all interferences caused by the owner's agents.

A careful reading of the record discloses that the defendant, personally, did not substantially interfere with the plaintiff's performance of the contract. Further, since the engineer was the agent of the owner and in no way under the control or direction of the defendant, the engineer's conduct did not provide the plaintiff with a legal ground upon which a rescission or abandonment of the contract with the defendant could be based. Therefore, since there is no evidence of a mutually accepted agreement to abandon the original contract, the plaintiff continued under a duty to perform. This, in turn, negates any promise of the defendant to recompense him for his additional expenses other than legitimately presented "extras," for a promise to pay another for what he is already bound to do fails for lack of consideration.

Finally, since the Indemnity Clause in the agreement did not cover this situation, the plaintiff must fail.

We sustain as meritorious the first assignment of error. It is unnecessary to consider the others.

The challenged judgment is reversed.

ON REHEARING

Leo Levenson, Norman B. Kobin and Paul R. Meyer, Portland, for the petition.

ROSSMAN, J.

A reading of the petition for a rehearing induces the belief that the plaintiff-respondent has misconstrued our previous opinion. It made no intimation that a rule prevails which renders the general con-

tractor liable to the subcontractor for delays and time consuming efforts that may unexpectedly beset the subcontractor in the performance of his subcontract. Moreover, this is not a case in which the plaintiff, as a subcontractor, seeks to hold the prime contractor (the defendant) responsible for not having the premises ready so that the subcontractor could proceed expeditiously with the performance of his work. The plaintiff, when he was ready to perform his work, entered upon the premises at his will and without interference from anyone began the performance of his work.

In this case the subcontractor seeks to hold the prime contractor responsible for work, material and efforts which he says he expended in meeting unwarranted demands of the engineer. He claims that the supervision of the engineer and his demands upon the plaintiff went beyond the contemplation of the defendant and the plaintiff when they entered into the subcontract. To the extent that the plaintiff, as subcontractor, was required to work upon the job longer than he had anticipated, the situation was due, so he says, to (1) the dilatory methods of the engineer and (2) the fact (if such it was) that the latter demanded of the plaintiff work beyond the requirements of the plans and specifications. In other words, the delay, to such an extent as any occurred, was due to the fact that the engineer required the work to be performed in a manner that required more time and effort than the plaintiff had foreseen. We believe that our previous opinion states the foregoing as the basis for the claimed liability; but if it does not do so, this opinion —and not the former—must be accepted as the statement of the facts.

Before stating specifically the contentions of the

petition for a rehearing we will mention additional facts. The petition does not criticize the part of our decision which ruled that the subcontract to which the defendant and the plaintiff were the parties subjected the latter to the jurisdiction and supervision of the engineer, Ebasco Services, Inc. The plaintiff, in support of his petition for a rehearing, argues that even though he entered into that relationship nevertheless the defendant was responsible if the engineer's directions went beyond those "contemplated by the parties at the time the contract was entered into." The quoted words were taken from the plaintiff's (respondent's) brief. The plaintiff's reply (the subject is not mentioned in the complaint) alleges that the plaintiff was required to perform his subcontract in a manner

"* * * more costly than reasonably would be incurred by plaintiff under customary methods and means, * * * all of which were not within the terms of plaintiff's agreement, nor contemplated between plaintiff and defendant * * *. Plaintiff protested to defendant * * * and informed defendant that the work was of a different nature, character and kind from that contemplated by the parties in its alleged contract * * *. By preventing plaintiff from prosecuting his work, pursuant to the usual and customary methods and means * * * the cost of prosecuting said work was increased considerably * * * and constituted a material modification, departure and abandonment of the alleged contract."

The bid which the plaintiff submitted to the defendant and which the latter accepted stated:

"All of the foregoing per specifications for project, drawings G-143482 * * * and letters of Aug. 15 and Aug. 16, to Electrical Construction."

It will be recalled from our previous opinion that the letters of August 15 and 16 (1958) directed attention

to parts of the specifications that were known as the General Conditions. The letters just mentioned and the General Conditions were prepared by the engineer. Their purpose was to extend the engineer's control over all contractors and subcontractors who worked upon this project, in the event they, like the plaintiff, acquiesced in the general conditions, so that through the engineer's supervision of their efforts they would comply fully with the plans, specifications, and contract. The General Conditions were, as we said, applicable in part to all subcontractors and when their provisions were applied to the plaintiff they required him to subject himself to the supervision of the engineer. They provided "The Owner contemplates and the Contractor hereby agrees to a thorough, minute inspection by the Owner, or by any of its agents, of all the work and material furnished under this contract." The engineer, as our previous opinion held, was the agent of the owner. The owner, Portland General Electric Co., was engaged in the construction of a large costly dam and hydroelectric plant. The work and buildings involved in this action were a part of that project. One can readily perceive that "thorough, minute inspection" very likely is essential in the construction of a large dam and in the building of appurtenant structures that will house electrical equipment. Ebasco Services, Inc., is an engineering concern of national status. On behalf of the Portland General Electric Co. it prepared the plans, specifications, contracts, etc. for the undertaking. As agent for the owner it also awarded the needed contracts and then supervised the work which each contractor and subcontractor performed. The record indicates that it had on the job several engineers, each skilled in a particular phase of the work that was under way,

and who inspected and supervised the different types of work such as concrete work, iron work and so on. The general conditions provided that supervision by the engineer should extend over the work performed by the subcontractors "as if they were employees of the contractor." There can be no doubt but what the plaintiff, as a subcontractor, was subject, pursuant to his own agreement, to the supervision and direction of the engineer. It is likewise clear that the General Conditions subjected the work which the plaintiff had undertaken to perform to inspection that would be more diligent and searching than "customary" and "ordinary" inspection—those being the words that the plaintiff's pleading employs. The General Conditions called for "thorough, minute inspection."

Although all the papers pertaining to this job, including the General Conditions, were placed before the plaintiff some days before he submitted his bid, he did not read the General Conditions. Likewise, he made no inquiries concerning them or their import. He attributes no blame to the defendant for his failure to have read the General Conditions. He simply did not read them. Likewise, he made no inquiries as to the name or identity of the inspecting engineer until after he had entered upon the performance of his subcontract.

The foregoing indicates that although the plaintiff speaks of supervision by the engineer that went beyond that "contemplated by the parties at the time the contract was entered into," he did not discover until after he had begun the performance of his subcontract the identity of the engineer, and did not know even then that the General Conditions, which he now concedes are a part of his subcontract, subjected him to the supervision of the engineer and required his

work to undergo "a thorough, minute inspection." Therefore, when the plaintiff refers to supervision which the parties contemplated "at the time the contract was entered into" he could not have had any well-informed expectations upon that subject because he did not know then that he would be under the supervision of the engineer and that he would have to do his work so well that it could withstand minute inspection. Unless we misjudge the plaintiff's testimony, he did not anticipate, when he undertook this subcontract, that any engineer would supervise his work. He evidently thought that the only person with whom he would have any relationship would be the defendant, and inferred that if his work satisfied the defendant he did not need to bother about any one else. That, probably is the reason why he did not inquire for the name of the supervising engineer.

When the defendant accepted the general contract including the part that is the work mentioned in the plaintiff's subcontract, it also was required to submit itself to the jurisdiction and supervision of the engineer. It, too, agreed to "a thorough, minute inspection" of its work.

Although the evidence indicates that the inspection by Ebasco Services was thorough, the engineer made no alterations whatever in the buildings, materials or any other feature of the work which the plaintiff was required to perform. Ebasco Services was insistent upon good work and may have been painstaking in its supervision, but the ultimate result of its efforts was faithful compliance with the specifications. The plaintiff claims that in several instances Ebasco Services misinterpreted the specifications, and in that manner required him to perform details which the contract

did not call for, but the specifications authorized the engineer to interpret them.

As our previous opinion points out, the plaintiff makes no charge that the defendant in any manner interfered with his efforts to perform his contract. To the contrary, he concedes that the defendant at all times was helpful to him. It was the engineer, and only the engineer that inspected his work and insisted upon high standards.

This, therefore, is a case in which the plaintiff voluntarily agreed that his performance of his sub-contract should be subject "to a thorough, minute inspection by" Ebasco Services, Inc. The defendant, which he now seeks to hold responsible for his ill fortune, made no trouble for him. To the contrary, as he freely concedes, the defendant, as contractor, was at all times helpful.

In *Norcross v. Wills,* 198 NY 336, 91 NE 803, the plaintiff, as the subcontractor for granite work upon a costly home, subjected himself to the supervision of Babb, Cook and Willard, the architects for the home. His subcontract provided that he should furnish the granite and set it in place "under the direction and to the satisfaction of Messrs. Babb, Cook and Willard, architects, acting for the purposes of this contract as agents of the owners." The prime contractor (defendant in the action) was subject to a similar provision which likewise subjected him, in the performance of his contract, to the supervision of the architects. Precisely the same situation is true in the case at bar. In the Norcross case, as our previous opinion points out, the court held that the prime contractor was not liable to the subcontractor. It reasoned in the following manner:

"The plaintiff knew of the defendant being un-

der a contract with the owner of the property which gave the absolute control of the work to Babb, Cook and Willard, the owner's architects, and with such knowledge he was also willing to agree in his contract to perform his work under their jurisdiction and to their satisfaction 'acting for the purpose of this contract as agents of the owner.' "

The same situation exists in the case at bar. The plaintiff, in accepting the subcontract, agreed to abide by the directions of the engineer. His quarrel is with the engineer or the owner. The engineer was the agent of the owner, not of the defendant. If the engineer did the plaintiff a wrong, the defendant was not responsible for it.

Decisions which are in harmony with the excerpt which we just quoted from the Norcross case are *Wright-Rosa Engineering Co., Inc. v. I. M. Ludington Sons, Inc.*, 174 NYS 273, and *Benjamin Foster Company v. Commonwealth of Massachusetts*, 318 Mass 190, 61 NE2d 147, 166 ALR 925.

The plaintiff's petition for a rehearing also contends:

"The court erred in holding that plaintiff-subcontractor was bound by the contract to perform pursuant to the supervision and direction of the engineer, even though that supervision and direction was found to be arbitrary and unreasonable and beyond that contemplated by the parties to the subcontract."

In presenting his case the plaintiff ignored throughout the provisions that demanded that his materials and work should withstand "thorough, minute inspection." Normally, when an engineer is given by contract the power of supervision his demands cannot be set

aside unless he was arbitrary or guilty of fraud. The Massachusetts court, in the decision which we cited, in speaking of a situation similar to the one before us, held:

> "* * * For a court to substitute its own lay opinions on such matters, however well it may think itself informed through evidence, for the opinions of the engineers in the field to whom the parties have entrusted such decisions would be directly contrary to the terms of the contract and in the long run likely to produce unsound results."

There is no contention in this case that the engineer was guilty of fraud, bad faith, or was prompted by an improper motive or purpose.

The foregoing takes care of the contentions of the petition for a rehearing which are applicable to this case, that is, to a situation in which the subcontractor claims that the supervising engineer demanded too much or acted tardily. Our previous opinion, in deciding the issues, mentioned rules which govern liability in cases where the subcontractor seeks to hold the prime contractor liable for delays that beset the subcontractor and which generally arise out of the failure of the contractor to have the premises ready at the appointed time for the performance of the subcontractor's work. Sometimes those delays occur from the fact that other subcontractors are busy upon the premises and delay the subcontractor who later becomes plaintiff in a case. Sometimes they arise out of the fact that one subcontractor has not completed, let us say, the footings of a building so that another subcontractor, who erects the steel work, may proceed with his work. The case at bar is not that kind of case. And, accordingly, those parts of our opinion were concerned with principles of law that are not

applicable to the case in hand. They are now nothing more than dictum and must be deemed withdrawn.

The petition for a rehearing is without merit and is denied.